STATE ex rel. Marvin C. WILLIAMS,
et al., Relators,

v.

Honorable William F. MAUER,
Judge, Respondent.

No. 68107.

Supreme Court of Missouri,
En Banc.

Dec. 16, 1986.

Rehearing Denied Jan. 13, 1987.

Thomas A. Sweeny, Kansas City, for relators.

James Borthwick, Truman K. Eldridge, Jr., Kansas City, for respondent.

ROBERTSON, Judge.

On September 4, 1985, respondent, the Honorable William F. Mauer, Presiding Judge of the Sixteenth Judicial Circuit, entered a case management order (the "order") relating to sixteen pending civil suits alleging asbestos-related injuries. The relevant portions of the Order are set out in Appendix A. By its terms, the order also applies to any asbestos-related actions filed subsequent to its entry. The order purports "to establish a uniform procedure for the conduct and coordination of orderly discovery in pre-trial procedures ... in order to facilitate pre-trial proceedings and to avoid duplication, undue burden and expense whenever possible...."

Relators filed a petition for a writ of prohibition in the Court of Appeals, Western District, claiming that respondent's order is contrary to the Rules of Civil Procedure of this Court and is therefore null and void. The Western District issued its preliminary rule in prohibition, and following argument, made its preliminary rule absolute. We granted respondent's application to transfer; we have jurisdiction. Mo. Const. art. V, § 10. Preliminary rule ordered quashed.

I.

"The Supreme Court may establish rules relating to practice, procedure and pleadings for all courts and administrative tribunals, which shall have the force and effect of law...." Mo. Const. art. V, § 5. Rule 50.01 permits trial courts to "make rules governing the administration of judicial business if the rules are not inconsistent with the rules of this Court, the Constitution or statutory law in force...."

Relators argue that portions of respondent's order are inconsistent with the Rules of Civil Procedure. Relator contends that respondent's order is, therefore, in excess of respondent's jurisdiction and prohibition is an appropriate remedy. Respondent urges that his order is not inconsistent with the Rules of Civil Procedure; respondent further claims that relators have an adequate remedy on appeal and that prohibition does not properly lie in this case.

Prohibition is appropriate to compel a trial judge to comply with the rules of this Court where there is no adequate remedy by appeal. *State ex rel. Bullington v. Mason*, 593 S.W.2d 224 (Mo. banc 1980). Prohibition is also appropriate where a trial judge seeks to permit discovery which is expressly forbidden by statute. *State ex rel. Faith Hospital v. Enright*, 706 S.W.2d 852 (Mo. banc 1986).

Here, relators claim that respondent's order is forbidden by Rule 50.01. Prohibition is the proper remedy to test respondent's authority in such a circumstance. *State ex rel. Gulf Oil Corp. v. Weinstein*, 379 S.W.2d 172, 175 (Mo.App. 1964). We caution, however, that a preliminary rule in prohibition will be made absolute only where there is a clear excess of jurisdiction. *State ex rel. Public Defender Commission v. Bonacker*, 706 S.W.2d 449, 451 (Mo. banc 1986).

## II.

Those portions of respondent's order that relators claim exceed his authority can be divided into issues dealing with requirements for plaintiffs' initial petitions in asbestos-related cases (the "petition issues") and issues relating to discovery (the "discovery issues"). For purposes of discussion we address these issues separately.

## A.

■ Relators argue that by requiring persons claiming injury from asbestos-related products to file, with their petitions:

A master identification list (¶ 12(a)),

a list of physicians and medical facilities at which the plaintiff was treated for any illness (¶ 12(b)),

copies of any medical opinions indicating that a plaintiff or decedent had an asbestos-related disease (¶ 12(c)),

a list of any lawsuits or workers' compensation claims filed by plaintiff both for asbestos and non-asbestos-related injuries (¶ 12(d)), and

> authorizations for defendants to obtain: Social Security records, tax records, employment records, workers' compensation records, hospital and physician medical records, union records, military records and Veterans' Administration records

(¶ 13), respondent's order imposes unfair and arbitrary burdens on asbestos victims in connection with the institution of their lawsuits. Relators also challenge Paragraph 11 of the order which requires that:

> All future petitions shall include, to the extent then known, the diagnosis of the alleged asbestos-related disease, the date of diagnosis of the disease, and the alleged period of exposure, and the plaintiff's social security number.

Relators claim that these requirements contradict Rule 55.05, which provides that a petition need only contain "(1) a short and plain statement of the facts showing that the pleader is entitled to relief, and (2) a demand for judgment for the relief to which he deems himself entitled...."

Relators also contend that Paragraphs 12 and 13 violate relators' due process and equal protection rights, unlawfully amend the Rules of Civil Procedure, and constitute an impediment to access to the courts in violation of Mo. Const. art. I, § 14. For the reasons which follow, we do not reach the merits of relators' claims regarding the petition issues.

Each of the relators in this action filed a petition for damages prior to the entry of respondent's order. None of these relators has been denied access to the courts by respondent's order. None of these relators has had his petition dismissed for failure to comply with Paragraphs 12 and 13 of the order.

On close inspection, it is apparent that these relators are attempting to protect the rights of future plaintiffs who may file a petition claiming an asbestos-related injury.

■ Prudential principles of justiciability, to which this Court has long adhered, require that a party have standing to bring an action. Standing requires that a party have a personal stake arising from a threatened or actual injury. *Harrison v. Monroe County*, 716 S.W.2d 263 (Mo. banc 1986).

Here, relators claim a threatened injury to future plaintiffs who may allege asbestos-related injuries. They have no personal stake in their challenge to Paragraphs 12 and 13 of respondent's order. Relators are, therefore, without standing to challenge the petition requirements of respondent's order.[1]

---

1. Relators also urge that respondent's order constitutes a rule which was adopted without a majority vote of the circuit judges of the circuit in violation of Rule 100.2.3 of the Circuit Court of Jackson County. Rule 100.2.3 provides:

   These rules may be amended by a majority of all circuit judges meeting for that purpose.

We do not determine whether respondent's order is an order or a rule. Nor do we decide whether this order applies, or could apply, to persons who have yet to file causes of action for asbestos-related injury.

This decision is limited in its scope to the applicability of respondent's order to these relators. Because of justiciability requirements not

## B.

With regard to the discovery issues, relators urge that:

(1) Paragraph 14 of respondent's order violates Rule 57.03 by imposing additional requirements to the procedure for taking a deposition;

(2) Paragraph 14 of the respondent's order requires a plaintiff to provide additional information in his notice of deposition, in violation Rule 56.01(b)(4) and 57.03(b);

(3) Paragraph 14(h)(12)(i) is contrary to Rule 57.03(a) because it imposes on critically ill plaintiffs the obligation to furnish the information required in Paragraphs 12 and 13 of respondent's order prior to taking the deposition of the critically ill;

(4) Paragraphs 21(b) & (d) are contrary to this Court's decision in *State ex rel. Gray v. Jensen*, 395 S.W.2d 143 (Mo. banc 1965), and Rules 56.01 and 57.01 in that they require the plaintiff to provide the defendant with a designation of the witnesses plaintiffs intend to call at trial; and

(5) Paragraph 23 of respondent's order establishes time limitations for joinder of parties contrary to Rule 52.06.[2]

■ Unlike relators' petition issue claims, the discovery issues raised by relators are justiciable. Having filed their lawsuits, the discovery provisions of respondent's order are presently applicable to these relators as they attempt to prosecute their causes of action. These relators face a threatened injury in which they have a personal stake. Relators therefore have standing to challenge the discovery provisions of respondent's order.

At the outset we note that relators have presented no evidence of respondent's application of this order in a manner which is inconsistent with our Rules. Our review of the order is thus limited to its facial validity. Where the order is susceptible to an interpretation which is not inconsistent

with our Rules, we shall adopt that interpretation.

### 1.

■ Rule 50.01 prohibits a circuit court from adopting a rule that is inconsistent with the rules of this Court. In *Douglas v. Thompson*, 286 S.W.2d 833, 835 (Mo.1956), this Court addressed the question of whether a circuit court rule requiring a plaintiff to list his address on the petition was contrary to the civil code which did not impose such a requirement. This Court said:

> We cannot say this rule requiring the plaintiff's address conflicts with the [Civil] Code or is an unreasonable requirement for large cities, where it could have an important purpose to facilitate investigations and the use of the discovery procedure of the code.... The additional requirement of the Circuit Court rule for the plaintiff's address ... is one which is not unreasonable, burdensome or difficult to comply with; and we hold the Court could properly make it under authority of rule 3.05(b) [now 50.01].

*Douglas* stands for the proposition that a trial court may impose requirements in addition to those imposed by the Rules of Civil Procedure, provided the additional requirements imposed are not unreasonable under the circumstances, not unnecessarily burdensome or not inconsistent with the Rules. Contrary to relators' argument, additional requirements are not definitionally inconsistent with the Rules.

Here the trial court determined that relators' litigation presents the exceptional problems which are the hallmark of complex litigation—problems of discovery and logistics which attend the broad range of issues and sheer volume of evidence which a large number of parties raise in support of their various positions. It would be improvident for this Court to second guess

---

met by these relators, we decline to address the applicability of the order to future litigants.

**2.** Relators also urge that Paragraphs 18, 19, 20 and 21(b) of the order are confusing and contradictory when read together. This is prohibition.

Even assuming, arguendo, that the paragraphs are confusing, confusion is not grounds for making the writ absolute. There must be an excess of jurisdiction shown before the writ can be made absolute.

respondent's decision as to the requirements of relators' litigation.

Under these circumstances, we believe that the provisions of Paragraph 14 of respondent's order "have an important purpose to facilitate investigations and the use of the discovery procedure. . . ." *Id.* We further believe that under these circumstances the provisions of paragraph 14 are not unreasonable, unduly burdensome, or inconsistent with the Rules.[3]

### 2.

■ Paragraph 14(h)(12)(i) of respondent's order states that the information required in Paragraphs 12 and 13 of the order as well as the plaintiff's answers to standard interrogatories must be submitted ten days in advance of the expedited deposition of a critically ill plaintiff, "unless otherwise ordered by the court on application of the plaintiff." Again, we have no evidence that respondent's order has been interpreted to deny a critically ill plaintiff the opportunity to preserve his testimony because of a failure to comply with Paragraph 14(h)(12)(i). We are, therefore, limited to reviewing the respondent's order for its facial validity.

On its face, the order permits the trial court to waive compliance with Paragraph 14(h)(12)(i) upon application of the plaintiff. For the reasons discussed at § II, B, 1, *supra*, we cannot say that Paragraph 14(h)(12)(i) exceeds respondent's jurisdiction.

### 3.

■ Relators next urge that Paragraphs 21(b) and (d) of the order are contrary to

*Jensen*, 395 S.W.2d 143, and by extension contrary to Rules 56.01 and 57.01. In *Jensen*, this Court held that it is not proper to inquire by interrogatory as to the persons whom an adverse party intends to call as a witness to testify at the trial.

This case does not present the issue decided in Jensen. Respondent's order does not require the disclosure of a witness list as a part of the discovery process. Instead, respondent's order requires the parties to designate the witnesses who will testify in person or by deposition at a specific time prior to trial, after discovery is completed. The relevant inquiry here is whether a trial court may require the disclosure of witness lists as a device to assist in the conduct of the trial in matters of complex litigation after the close of discovery.

Our discovery rules are designed to avoid surprise at trial, *Hilmer v. Hezel*, 492 S.W.2d 395, 396 (Mo.App.1973), thereby fostering the orderly administration of justice. We also recognize the sanctity of counsel's work product, a concept upon which *Jensen* relies. Complex litigation, by its very nature, requires that these two principles be balanced.

The rule announced in *Jensen* properly recognizes that work product must be protected during the discovery phase of litigation. It serves little purpose to require the disclosure of trial witnesses during discovery, even in the most complex cases. Once discovery is completed and the day of trial approaches, however, the policy objective of orderly, efficiently managed trials tips the balance in favor of disclosure of witnesses to be used at trial.

---

**3.** One can argue, as does Judge Rendlen, that Paragraph 12(a) as applied to these relators by Paragraph 12(e) is a discovery provision. Relators, however, are not found to complain about the information required by the order; their complaint is that the Paragraph 12(a) information is required with the filing of a petition.

Two observations are in order: First, Judge Rendlen's primary attack on Paragraph 12(a) is its perceived "inconsistency" with Rule 55.05. Rule 55.05 pertains to the requirements for pleadings. As Judge Rendlen agrees, if only reluctantly, these relators are without standing to challenge pleading requirements. Given that conclusion, we do not believe it is appropriate to reach the merits.

Second, no one argues that the information to be provided under Paragraph 12(a) by these relators is not discoverable. Does Paragraph 12(a) constitute an unreasonable burden on these relators? For the reasons discussed in § II, B.1, we do not think that Paragraph 12(a) is unreasonable under the circumstances, unnecessarily burdensome, or inconsistent with our Rules.

Under our discovery rules, if an adverse party has sought the information, each party will have disclosed the names of persons having knowledge of facts and opinions relating to the litigation. *Garrison v. Garrison*, 640 S.W.2d 179, 180 (Mo.App.1982). Each such person disclosed is a potential witness. The witnesses to be used at trial are but a subset of those persons already revealed to an an adverse party. Disclosure, prior to the trial (and after the close of discovery), of those witnesses a party intends to call at trial, makes eminent sense in matters of complex litigation. Such disclosure fosters preparation for cross examination, the management of exhibits, the focusing of issues, and the orderly and efficient conduct of the trial.

The practice embodied in respondent's order is followed in the federal courts. See Rule 16(c)(5), F.R.Civ.P.; *Brennan v. Engineered Products, Inc.*, 506 F.2d 299 (8th Cir.1974). Such practice is reasonable under the circumstances present in this case.

We believe that Paragraphs 21(b) and (d) of respondent's order are neither contrary to our Rules of Civil Procedure nor contrary to the interpretation of those rules found in Jensen.

**4.**

■ Respondent next urges that Paragraph 23 of respondent's order is contrary to Rule 52.06. Again, our focus is on the facial validity of the order, there being no evidence that the trial court has applied the order in a manner inconsistent with our rules.

Rule 52.06 states:

Misjoinder of parties is not ground for dismissal of an action. Parties may be dropped or added by order of the court on motion of any party or of its own initiative at any stage of the action and on such terms as are just. Any claim against a party may be severed and proceeded with separately.

Rule 52.06 cannot be read in a vacuum; it must be read with Rules 52.04 and 52.05. Rules 52.04 and 52.05 establish the grounds upon which joinder is required or permit-

ted. Rule 52.06 does not establish, as relators seem to argue, an absolute right to join additional parties. A party who cannot be joined under Rules 52.04 and 52.05 cannot be joined under Rule 52.06. *Gulf Oil Corp.*, 379 S.W.2d 172. Instead, Rule 52.06 provides the trial court with discretion to implement Rules 52.04 and 52.05, within the context of a particular lawsuit, "on such terms as are just."

Paragraph 23 of respondent's order does not forbid the joinder of additional parties; it makes joinder after a specified time in the litigation a matter of the trial judge's discretion upon a showing of good cause. Paragraph 23 is not facially inconsistent with Rule 52.06.

**III.**

As stated at the outset, a preliminary order in prohibition will be made absolute only where a trial court has clearly exceeded its jurisdiction. On this record, it has not been shown that respondent's order is clearly in excess of his jurisdiction. The preliminary rule in prohibition is quashed.

HIGGINS, C.J., and BILLINGS, BLACKMAR and DONNELLY, JJ., concur.

RENDLEN, J., concurs in part and dissents in part in separate opinion filed.

WELLIVER, J., dissents in separate opinion filed.

**APPENDIX A**

ORDER COORDINATING PRE–TRIAL PROCEEDINGS

It appears that the above actions are pending in the Circuit Court of Jackson County, Missouri; that each suit alleges personal injuries or death due to exposure to asbestos-containing products; that many of the defendants in one case are also defendants in all or some of the other actions; that considerable discovery will be done by the parties in each case; that other actions against many of the defendants are anticipated; that extensive preparation will

be necessary in each of these cases and that the orderly administration of justice and the interests of all parties, both in time and economy, lend themselves to a determination that pre-trial proceedings in these cases should be coordinated.

For the purposes of coordinating these proceedings and for the purpose of coordinating other procedures as may be hereafter determined by the Court, it is hereby ORDERED THAT:

## GENERAL

1. Civil Actions Nos. CV83–13186, CV79–2819, CV80–3804, CV80–25953, CV–82–5333, CV82–6165, CV83–7841, CV83–19927, CV83–21240, CV83–25273, CV84–1478, CV84–18252, CV84–27308, CV85–2555, CV85–3413, and CV85–6325 pending in the Circuit Court of Jackson County, Missouri, and any other cases hereafter coordinated with these actions, shall be governed by the terms of this Order. Any action which may hereafter be instituted or conducted in the Circuit Court of Jackson County, Missouri, and which alleges claims for injury or death as a result of exposure to asbestos or asbestos-containing products shall be made a part of these Coordinated Proceedings and shall be governed by the terms of the Order unless otherwise ordered.

\*　　\*　　\*　　\*　　\*　　\*

11. All future petitions shall include, to the extent then known, the diagnosis of the alleged asbestos-related disease, the date of diagnosis of the disease, and the alleged period of exposure, and the plaintiff's social security number.

12. In all cases commenced subsequent to the entry of this Order, the plaintiff shall serve on all parties, on the date of the filing of the Petition, the following:

a) One master identification list, consisting of the following:

(1) The asbestos-containing PRODUCTS to which the plaintiff contends he, she or the decedent was exposed, identified by brand name, if known, and if unknown, by generic name and specific application;

(2) For each product, the specific DEFENDANT to which the plaintiff attributes said product;

(3) For each product and attributed defendant the specific DATES during which, and specific LOCATIONS at which, the plaintiff contends he, she or the decedent was exposed;

(4) For each product and attributed defendant and corresponding date and location of exposure, the name, address, and telephone number of each PERSON who has knowledge of the use of said product for each date and location.

(i) The master identification list shall consist of the following format:

### MASTER IDENTIFICATION LIST

| Product | Defendant | Date(s) Of Exposure | Location Of Exposure | Witness(es) |
| --- | --- | --- | --- | --- |

(ii) The master identification list shall be verified by the plaintiff by oath or affirmation and shall have the effect of an answer under oath to an interrogatory.

(b) A list of the names and addresses of all physicians and medical facilities by whom or at which the plaintiff or the decedent was treated or *any* illness. The list given shall have the effect of an answer under oath to an interrogatory.

(c) Copies of any medical opinion or opinions indicating that the plaintiff has or the decedent had an asbestos-related disease. If no written opinion is available, a statement or any oral opinion received by the plaintiff, or his or her attorney, and the

name and address of the doctor or doctors giving the opinion.

(d) A list containing the full style, docket number, and date of filing of any lawsuit, or any workers' compensation claim (including claims against any governmental agency), filed by the plaintiff in any jurisdiction, which (i) contains the same or similar allegations against any of the same defendants or (ii) seeks damages or compensation for any personal injury prior to the filing of plaintiff's Complaint. This list given shall have the effect of an answer under oath to an interrogatory.

(e) In those cases instituted prior to the entry of this Order (listed in Paragraph 1, above) the plaintiff shall serve such master identification list on all parties within 90 days of the entry of this Order.

(f) In those cases commenced subsequent to the entry of this Order in which a new plaintiff represented by an attorney who has not previously appeared for some other plaintiff in these Coordinated Proceedings shall serve such master identification list of all parties within 90 days of service of a copy of this Order by the Court Administrator in accordance with Paragraph 5, above.

13. Additionally, simultaneously with the filing of the petition each plaintiff shall provide defendants written authorizations allowing the defendants to obtain social security records, tax records, employment records, workers' compensation records, hospital and physician medical records, union records, military records, and Veterans Administration records.

## DISCOVERY

14. Except as ordered by the Court, depositions shall be scheduled and conducted in accordance with the following:

(a) Examination of a witness or a party on oral deposition, whether such examination is by plaintiffs or defendants, shall be by a primary attorney and no backup attorney. Nothing herein shall preclude any other counsel from participating in the deposition to the extent deemed necessary to represent the individual interests of his or her client as long as participation does not involve unnecessary duplication. Out-of-state counsel may be designated by the defense attorneys or plaintiff's attorney to conduct or participate in depositions.

(b) All depositions taken shall be subject to the rule that all objections and motions to strike, except objections as to the form of the question, shall be reserved and shall be stated and heard at a subsequent date. An objection made during a deposition by any counsel for any plaintiff or by any counsel for any defendant shall be considered as being made on behalf of all plaintiffs or defendant respectively, except that any counsel may disclaim such objections by so stating.

(c) During the questioning of a deponent and while a question is pending, no counsel shall confer with the deponent.

(d) Prior to the beginning of any deposition, each counsel of record present shall give his or her name and the party which he or she represents to the court reporter who is transcribing the deposition and to the opposing counsel.

(e) Multi-jurisdiction depositions may be noticed in these Coordinated Proceedings or any individual case included therein the manner prescribed for depositions by the Missouri Rules of Civil Procedure and by the Order. The party noticing a multi-jurisdiction deposition shall state in the notice such jurisdiction in which the deposition has been or will be noticed to the extent known to the party at the time notice is given.

(f) The notice of the taking of any deposition of any out-of-state or expert witness shall be accompanied with a statement giving (1) the name and address of the witness; (2) the field in which he or she is being offered as a witness; (3) the substance of the facts to which the proposed witness is expected to testify; (4) the substance of the opinions to which the proposed witness is expected to testify and a summary of the grounds for such opinion; and (5) a summary of the proposed witness'

qualifications within the field in which he or she is expected to testify.

(g) Whenever any party shall notice the deposition of any witness, the opposite party shall not be allowed to take a prior discovery deposition. In instances where such discovery deposition is desired the opposite party shall accomplish the same in the prior noticed deposition with the court subsequently ruling on all inadmissible matters.

(h) Videotape depositions are to be taken pursuant to Rule 57.03 of the Rules of Civil Procedure, unless otherwise modified herein. In addition to paragraphs 14(a) through (g) above, the following conditions will apply to the deposition:

(1) In addition to the videotaped record, the deposition shall be stenographically transcribed and recorded by a qualified court reporter.

(2) All attorneys of record attending the deposition, and the video operators and court reporter, shall identify themselves by name for the record one after another, on camera at the beginning of the deposition.

(3) The swearing and affirming of the witness shall be done on camera. The oath or affirmation shall be administered to the witness by a person authorized to do so by law.

(4) At the beginning of the examination by any counsel, counsel shall identify himself or herself by name within the camera's field of vision. The camera will focus exclusively on the deponent at all times during the deposition, except for identification of exhibits, and will not zoom in or out on a witness or any other person at the deposition. The camera shall not "pan" other than to include exhibits, and the field of view should, to the extent possible, consist of a plain background.

(5) If during the course of the deposition it becomes necessary to have an earlier question or answer or other portion of the record of the deposition re-read, this shall be accomplished by requesting the person stenographically recording the deposition to read from the stenographic record.

(6) The videotape itself will be available for the Court and any and all counsel in order that the Court or counsel may compare the stenographic transcript with the videotape. The original videotape will remain in the possession of the court reporter who made the stenographic record. Said court reporter shall protect and preserve the unaltered videotape in its entirety, pending further orders of the Court.

(7) A copy of any part or all of the videotape deposition may be made by or for any requesting counsel of a party at said requesting party's own expense. However, no part of the videotape deposition shall be released or made available in any way to any member of the public prior to entry of an order of the Court upon notice to all counsel with the right to object.

(8) Any cameraman or person making the videotape recording shall take an oath to record the proceedings accurately and in a trustworthy manner. He or she shall certify as to the accuracy and completeness of the recording both orally and visually at the conclusion of the deposition in the same manner as a stenographic reporter certifying a typed record of the deposition.

(9) It shall be the duty of the person who stenographically records the deposition to accurately record during the course of the deposition as to when a tape is changed, when examination by each of the various counsel commences and ends, and whenever there is an interruption of the continuous tape exposure for the purposes of off-the-record discussions, mechanical failure of the machine, or other similar technical problems. Before the video recorder is turned off for any reason, the video operator shall allow all parties to briefly state their positions, agreement, or disagreement with that action for the record.

(10) The video equipment shall be of sufficient quality to produce an accurate and trustworthy videotaped record of the deposition. If during the deposition there is a failure of the equipment, either visual or auditory, or the product is of such poor quality as to render the use of the video-

tape unfair to the interest of any of the parties hereto, then no part of the video-tape shall be utilized by any party in respect to such deposition and the parties will use, absent an agreement of counsel, the stenographic transcription of the deposition, provided the same otherwise complies with legal requirements.

(11) If any questions or answers are stricken by the Court, then the copy of the videotaped recording which is to be used in court shall be edited to reflect such deletion. However, in no event shall the original videotaped recording be altered in any manner except as expressly approved by this Court.

(12) The video cameraman will prepare a log index, using the same format as the stenographic record, cross-referenced to the digital counter on the camera. The log index will indicate the digital counter number for every twenty-five (25) pages of the stenographic record. The party noticing and conducting the videotape deposition shall bear the expense of the original video-tape and the original transcribed deposition.

(i) Before an expedited deposition of a critically ill plaintiff may be held, plaintiff's counsel must have provided defendants with plaintiff's answers to the Standard Interrogatories, along with the other information required in Paragraphs 12 and 13 above, (re: product I.D., physicians, etc.) at least ten (10) days in advance of the expedited deposition unless otherwise ordered by the court on application of the Plaintiff. Such application may be made ex parte.

\*    \*    \*    \*    \*    \*

18. (a) Defendants shall be entitled to have plaintiff medically examined by at least one specialist in each field of medicine applicable to that plaintiff's allegations.

(b) All parties shall cooperate in making available to any other party any biopsy results, tissue slides or samples, original x-rays, test results, and any other available medical diagnostic results or tools which might be used to establish a diagnosis or medical opinion. In a case of wrongful death, in addition to the foregoing, plaintiffs shall furnish to the defendants' any available tissue samples or slides and the autopsy results, if any.

The discovery period for the cases made part of these Coordinated Proceedings shall be nine months from the filing of the Petition.

## PRODUCT/DEFENDANT IDENTIFICATION

19. Seven (7) months after filing of the petition, each plaintiff shall provide the defendants a master identification list identifying products, defendants, dates and locations of exposure, and witnesses, utilizing the format described in Paragraph 12 of this Order and the plaintiff will be precluded from naming and using at trial or in connection with motions any additional exposure witnesses not already named and identified by the plaintiff in supplemental identification lists filed at least 60 days prior to trial.

20. Seven (7) months after the filing of the Petition, in addition to the master identification list described in Paragraph 12 of this Order, the plaintiff shall provide or have provided to each individual defendant all such other evidence upon which the plaintiff intends to rely to establish the identification of that particular individual defendant as being a defendant to whose products(s) plaintiff or the decedent was exposed. The plaintiff is precluded from presenting and using at trial or in connection with motions any additional evidence of identification of or exposure to asbestos-containing products not already identified and presented in accordance with the requirements of this Order unless filed in supplemental identification lists at least 60 days prior to trial.

## PRE–TRIAL DEADLINE

21. The Presiding Judge shall arrange all future trial settings of cases included in these Coordinated Proceedings. Any trial setting established prior to the date of this Order shall remain as previously set. Once

such case is set for trial, the following procedures and deadlines shall apply.

(a) On or before 100 days prior to trial, the plaintiff is required to narrow and reduce the number of expert witnesses by designating expert witnesses plaintiff reasonably anticipates will actually testify at trial.

(b) On or before 100 days prior to trial, the plaintiff is required to designate which witnesses will testify in person and which will testify by deposition; and in the event of testimony by deposition, the plaintiff is required to provide the date and place of the deposition and whether or not the deposition will be by videotape.

(c) Each party shall require the party's diagnostic witnesses to have examined all x-rays, medical records, tissue slides, or any other materials which serve as a basis for the witness' testimony and which are known to the party or the party's attorneys at the time of the witness' deposition; and that each such witness be prepared to give his final trial opinion as of the date of taking of his deposition by an opposing party to the extent that he can do so on such information and materials then available. If new or additional information or materials becomes known to a party or a party's attorneys after the date of a witness' deposition, opposing counsel will be immediately notified and will be allowed to depose, or redepose, as the case may be, each such expert with respect to the new information or materials if the new information or materials in any way changes the opinion of the witness.

(d) That on or before 100 days prior to trial, the plaintiff is required to designate the specific exhibits that he reasonably anticipates will be offered at trial, including any other such trial exhibits which do not appear on the master list which plaintiffs have heretofore furnished to defendants; and as to each exhibit so designated, state which defendant or defendants the exhibit will be introduced against.

(e) Within 55 days after defendants have been served with the plaintiff's designations included in Subparagraphs 21(a) through (d) above, defendants shall designate their state-of-the-art witnesses, diagnostic witnesses, and any treating physicians who they reasonably anticipate will actually testify at trial. Further, the defendants are required to designate which of these witnesses will testify in person and which will testify by deposition; and if any expert witness will testify by deposition, the defendants are required to state the date and place of the deposition and whether or not the deposition was or will be by videotape.

Additionally, within 55 days after the defendants have been served with the plaintiff's exhibit designation of those specific exhibits that he reasonably anticipates will be offered at trial, along with the designation as to which defendant or defendants, such exhibits will be offered against, the defendants shall designate those exhibits that they reasonably anticipate will actually be offered into evidence at trial.

(f) The Plaintiff and defendants will be precluded from listing or calling at trial any witness, or offering into evidence at trial any exhibits, not designated in accordance with the requirements of Subparagraphs (a) through (e) above. Upon a showing of good cause, a party may request the Court in the interest of justice to be allowed to list and call a witness, or offer an exhibit, not designated as required hereinabove.

(g) All other motions by any party (including motions for summary judgment), except motions relating to the admissibility of evidence at trial, must be filed and served no later than 60 days prior to trial; responses in opposition to such motions must be filed and served within 20 days of the filing and service of the motions; and the Court will rule all such motions as soon as possible after responses are due. Motions relating to the admissibility of evidence at trial shall be governed by the applicable provisions of the Local Rules.

\*    \*    \*    \*    \*    \*

23. Plaintiff may not join additional defendants after thirty (30) days from the taking of the plaintiff's deposition, or after one hundred fifty (150) days from the filing of the action, whichever comes first, except for good cause shown.

24. The Court expects all counsel to cooperate in and respond promptly and in good faith to interrogatories, motions, requests to produce, deposition, procedures adopted in or applicable to these actions, and all orders of the Court. A failure to do so may result in a dismissal of a claim, striking of a defense, denial of the right of use of materials discovered, the assessment of costs, attorneys' fees, damages, forfeitures, or other sanctions as provided by Supreme Court Rules, Local Rules, and case law.

\*   \*   \*   \*   \*   \*

---

Date           Judge

RENDLEN, Judge, concurring in part and dissenting in part.

Although laudably concerned with the needs of the circuit courts in dealing with "the exceptional problems which are the hallmark of complex litigation," the principal opinion, in its zeal to uphold respondent's "order,"[1] unfortunately confers upon inferior courts far greater authority than permissible under the Constitution or our Rules of Civil Procedure, impedes access to the courts, and overly restricts relators' standing.

Relators have standing to challenge Paragraph 12(a) of respondent's "order" as well as the discovery provisions of the "order." *Harrison v. Monroe County*, 716 S.W.2d 263, 266 (Mo. banc 1986); *Arsenal Credit Union v. Giles*, 715 S.W.2d 918, 920 (Mo. banc 1986). Paragraph 12(e) requires relators to serve on all parties the master identification list described in Paragraph 12(a). Paragraph 24 of respondent's "order" provides:

The Court expects all counsel to cooperate in and respond promptly and in good faith to interrogatories, motions, requests to produce, deposition, *procedures adopted in or applicable to these actions*, and all orders of the Court. A failure to do so may result in a *dismissal of a claim*, striking of a defense, denial of the right of use of materials discovered, the assessment of costs, attorneys' fees, damages, forfeitures, or other sanctions as provided by Supreme Court Rules, Local Rules, and case law. (Emphasis added.)

As with the discovery provisions, relators have a personal stake arising from a threatened or actual injury in their challenge to Paragraph 12(a). Under Paragraph 24, the threatened injury, including dismissal, is the same whether relators fail to comply with Paragraph 12(a) or the discovery requirements.

Thus, recognizing relators standing to challenge Paragraph 12(a) and the discovery provisions of respondent's "order," I would prohibit respondent from enforcing those provisions which are inconsistent with our Rules of Civil Procedure and unconstitutionally impede access to the courts.[2]

First, the challenged provisions are inconsistent with the rules of this Court and therefore void. "The supreme court may establish rules relating to practice, procedure and pleading for all courts and administrative tribunals, which shall have the force and effect of law." Mo. Const. art. V, § 5. "The circuit judges of the circuit may make rules for the circuit not inconsistent with the rules of the supreme court." Mo. Const. art. V, § 15.1. "[T]rial courts may make rules governing the administration of judicial business if the rules are not inconsistent with the rules of this Court, the Constitution or statutory law in

---

1. Although the principal opinion finds it unnecessary to decide the issue, there can be little doubt that on its face respondent's so-called "order" is in fact a rule as it purports to control all future asbestos cases filed in Jackson County.

2. It is unnecessary to address relators' additional challenges to the validity of respondent's "order."

force." Rule 50.01. Rules or orders made in excess of a court's power are void. *State ex rel. Geers v. Lasky,* 449 S.W.2d 598, 600 (Mo. banc 1970); *Wade v. Wade,* 395 S.W.2d 515, 518 (Mo.App.1965). As conceded by the principal opinion, it is clear from *Douglas v. Thompson,* 286 S.W.2d 833, 835 (Mo.1956), that requirements imposed by a trial court which are in addition to requirements imposed under this Court's rules are invalid if they either: (1) are inconsistent with our rules; *or* (2) are unreasonable or burdensome.

Paragraph 12(a) of respondent's "order" is inconsistent with Rule 55.05, which prescribes what must be contained in a pleading setting forth a claim for relief. Our rule requires only that the pleading contain "(1) a short and plain statement of the facts showing that the pleader is entitled to relief, and (2) a demand for judgment for the relief to which he deems himself entitled." Running contrary to the simple requirements of Rule 55.05, Paragraph 12(a) of respondent's "order" mandates that pleadings must be substantially enlarged and burdened with a "master identification list," including:

(1) The asbestos-containing PRODUCTS to which the plaintiff contends he, she or the decedent was exposed, identified by brand name, if known, and if unknown, by generic name and specific application;

(2) For each product, the specific DEFENDANT to which the plaintiff attributes said product;

(3) For each product and attributed defendant the specific DATES during which, and specific LOCATIONS at which, the plaintiff contends he, she or the decedent was exposed;  ·

(4) For each product and attributed defendant and corresponding date and location of exposure, the name, address, and telephone number of each PERSON who has knowledge of the use of said product for each date and location.

Clearly these additional pleading requirements found in Paragraph 12(a) are inconsistent with Rule 55.05 and therefore void. Mo. Cont. art. V, § 15.1; Rule 50.01. Assuming arguendo respondent's "order" is not inconsistent with Rule 55.05, the added requirements of Paragraph 12(a) are "unreasonable, burdensome or difficult to comply with," *Douglas,* 286 S.W.2d at 835, especially in view of the circumstances that it is imposed upon asbestos victims, some of whom are dying and many who were exposed to asbestos while working in the building trade industries over a period of years at countless job sites for numerous employers, and that by Paragraph 14(h)(12)(i) of respondent's "order" an expedited deposition of such plaintiff cannot be held until this onerous requirement is met.

Similarly, the challenged discovery provisions of respondent's "order" are inconsistent with our rules and therefore void.[3] For example, Paragraph 14, regarding depositions, is inconsistent with our Rule 57.-03(b)(1), which requires only that a notice of deposition state "the time and place for taking the deposition and the name and address of each person to be examined, if known, and, if the name is not known, a general description sufficient to identify him or the particular class or group to which he belongs." However Paragraph 14(f) of respondent's "order" additionally requires:

The notice of the taking of any deposition of any out-of-state or expert witness shall be accompanied with a statement giving (1) the name and address of the witness; (2) the field in which he or she is being offered as a witness; (3) the substance of the facts to which the proposed witness is expected to testify; (4)

---

**3.** Relators also complain that read together, Paragraphs 18, 19, 20 and 21(b) are confusing and contradictory, and that Paragraphs 19 and 20 impose arbitrary deadlines upon plaintiffs that are not imposed upon defendants. Paragraph 18 provides *inter alia* that the discovery period shall be nine months from the filing of the petition. Paragraphs 19 and 20 limit plaintiffs to seven months in which to make certain disclosures, although they also provide for supplemental identification lists up to sixty days in advance of trial. These complaints offer further reason for us to exercise our discretion and make the preliminary rule absolute.

the substance of the opinions to which the proposed witness is expected to testify and a summary of the grounds for such opinion; and (5) a summary of the proposed witness' qualifications within the field in which he or she is expected to testify.

Such requirements are inconsistent with Rule 57.03(b)(1), as well as Rule 56.01(b)(4) pertaining to the scope of discovery of expert witnesses. Similarly, while Rule 57.03(a) authorizes the taking of a deposition at any time after commencement of an action, even (by leave of court) prior to the expiration of thirty days after service of the summons and petition upon any defendant, Paragraph 14(h)(12)(i) of respondent's "order" grants critically ill plaintiffs this right to an expedited deposition only upon terms more onerous than does Rule 57.03(a). *See Puckett v. Swift & Co.*, 229 S.W.2d 713, 717 (Mo.App.1950) ("a circuit court does not have the power to adopt a rule of practice which deprives a litigant of a right given it by law, or which grants that right upon terms more onerous than those fixed by law"). Additionally, Paragraph 14(h) of respondent's "order" provides numerous restrictions and requirements for videotaped depositions directly contrary to or in addition to those found in Rule 57.03(c). Respondent in Paragraph 14(h) expressly purports to modify the Rules of Civil Procedure, and does so without authority.

Paragraphs 21(b) and (d) require a plaintiff to designate which witnesses he intends to call and the exhibits he anticipates offering at trial. In *State ex rel. Gray v. Jensen*, 395 S.W.2d 143 (Mo. banc 1965), we held that our rules do not permit discovery of the names of persons intended to testify at trial. *See also State ex rel. State Highway Commission v. Pfitzinger*, 569 S.W.2d 335, 336 (Mo.App.1978). The principal opinion places form over substance in distinguishing *Jensen* based upon the timing of the forced disclosure. The point remains that Paragraphs 21(b) and (d) compel disclosure of nondiscoverable information. Moreover, this "inva[sion of] the work product of counsel and the privileged rela-

tionship between attorney and client," *Jensen*, 395 S.W.2d at 146, is no less simply because of its timing.

Finally, Paragraph 23 of respondent's "order" imposes time limitations upon plaintiffs for joinder of additional defendants inconsistent with Rule 52.06. Under Paragraph 23, "after thirty (30) days from the taking of the plaintiff's deposition, or after one hundred fifty (150) days from the filing of the action, whichever comes first" plaintiff may join additional defendants only upon a showing of good cause; Rule 52.06 imposes no such express burden on plaintiff. Once again, respondent improperly attempts to grant relators a right given them by law only upon terms more onerous than those fixed by law. *Puckett*, 229 S.W.2d at 717.

In addition to exceeding respondent's authority under Rule 50.01 as described above, the net effect of the "order" is to impede access to our courts in violation of Mo. Const. art. I, § 14. *See, e.g., Strahler v. St. Luke's Hospital*, 706 S.W.2d 7 (Mo. banc 1986); *State ex rel. Cardinal Glennon Memorial Hospital for Children v. Gaertner*, 583 S.W.2d 107 (Mo. banc 1979). Unless plaintiffs, including relators, comply with the unreasonable and burdensome requirements of respondent's "order," their cause may be dismissed.

I only reluctantly concur in the principal opinion's finding that relators lack standing to challenge Paragraphs 11, 12(b), 12(c), 12(d) and 13 of respondent's "order." My reluctance is grounded in several prudential concerns, including: it does not require a broad reading of the "order" to conclude that relators will be required to disclose the information described in those paragraphs; as Judge Welliver proffers in his dissent, we could hold that no standing is required of anyone to trigger our execution of our duty to assure free access to the courts; it seems highly inefficient if not unjust to deny standing, have respondent order the described disclosures, and have relator refile his petition for writ of prohibition, which then will have to again work its way

through our courts; and, finally, it is troubling that if relators, or future plaintiffs, are ordered to make the required disclosures they may have to risk suffering a dismissal in order to challenge the order. However, if respondent's "order" is strictly read, these paragraphs do not apply to relators and therefore I concur in the finding of no standing as to relators' challenges of them.

It is not within a trial court's discretion to modify the Rules of Civil Procedure or to ignore prior case law. As to those portions of the "order" applicable to relators, described above, respondent has acted in excess of his jurisdiction and I would therefore make the preliminary rule absolute insofar as it pertains to those applicable provisions.

WELLIVER, Judge, dissenting.

I respectfully dissent.

There is no question but what Section 1, 11, 12 and 13 of the order, as they relate to the filing of future lawsuits, set up additional requirements over and above those now required by our statutes and our rules for the filing of lawsuits. In so doing, the proposed order invades the rule-making power bestowed on this Court by Section 5, Article V of the Missouri Constitution. To the extent that our Rules are exceeded by the order, it constitutes an unauthorized limitation upon free access to the courts as guaranteed by the Constitution. Mo. Const. art. I, § 14. The duty is ours to assure that there be free access to the courts of Missouri and no standing is required of anyone to trigger our execution of this duty.

In the normal course of events, were this Court called upon to produce such a rule, we would first assign the original drafting to a special committee consisting of the most knowledgable judges and the most knowledgable specialist in the field that we could select and charge them to consider and recommend a rule. I would suggest that this process, based upon our experience with other such rules committees, could be expected to take six month to a year under the most advantageous circumstances. We would, under most circumstances run the recommended rule through the Missouri Bar Association Board of Governors and their appropriate standing committees for their recommendations. We would then act upon the recommended rule, which if approved, would be published to give a six months notice to the bar of our adoption of the rule and its effective date. Mo. Const. art. 5, § 5.

In spite of my view that Judge Mauer's proposed order is overly broad is this, and possibly other respects, I would compliment him on the product of his effort to make this first major order relating to the management of multiple case litigation. It is a scholarly piece of work.

In my opinion, this case suggests both the need for and the propriety of this Court promulgating a rule setting forth guidelines within which our trial courts can make orders regarding the management of multiple case litigation. In this connection, three things appear to me to be clear. First, timely handling of this group of cases will not permit either the time for consideration or the time for notice involved in our usual rule-making process. Second, there will be variables in each multiple case management situation that can never be contemplated or covered in a single rule and the single rule can, at most, set guidelines. And third, I would respectfully suggest that any special rule committee selected as I have suggested above would involve and include both this judge and many of the attorneys already involved in this case.

In my view, approval of this order by the Court at this time sets the entire order in concrete just as effectively as if we had adopted the order as our rule after exhausting our normal rule-making process. This rule that I now perceive to be overly broad and extremely expansive of our existing rules, will, in my opinion, become the minimal rule upon which all who follow are challenged to build and further expand based upon the overwhelming approval bestowed upon the order by the principal

opinion in this case. Such a course of action I deem to be both precipitious and dangerous. Unbridled delegation of this Court's rule-making power to trial courts can only result in a situation we will live to regret.

There is an alternative course of action which I respectfully suggest would best preserve the integrity of this Court's rule-making power while best serving the expeditious and orderly administration of justice.

We could make the preliminary rule absolute to the extent that the order limits access to the courts as I have above outlined and could then conditionally approve the remainder of the order for use on an experimental basis in these cases. In the meantime, this Court could create a Special Rule Committee to consider recommending a permanent rule setting general guidelines for the management of future multiple case litigation.