### IN the INTEREST OF: M.B.F.

### Juvenile Officer, Respondent,

### v.

### D.L. (Putative Father), Appellant.

### WD 80269

Missouri Court of Appeals, Western District.

OPINION FILED: September 26, 2017

Ryan F. Kaiser, Kansas City, MO, Attorney for Respondent.

David A. Suroff, Kansas City, MO, Attorney for Appellant.

Lisa R. Robinett, Kansas City, MO, Guardian ad litem.

Before Division Two: Edward R. Ardini, Jr., Presiding Judge, and Karen King Mitchell and Anthony Rex Gabbert, Judges

Karen King Mitchell, Judge

D.L. appeals from the juvenile court's adjudication regarding neglect of Child and its placement of Child in the custody of Children's Division. Though D.L. does not challenge the juvenile court's assumption of jurisdiction, he argues on appeal that the juvenile court erred in sustaining the Juvenile Officer's petition alleging neglect by D.L. because the evidence was insufficient to support that determination. In other words, D.L.'s only complaint is that the juvenile court erred in finding that he neglected Child, but he is not seeking to overturn the juvenile court's assumption of jurisdiction nor its order placing Child in custody of Children's Division. Because D.L. is not entitled to appeal this determination, his appeal is dismissed.

## Background

Child was born on June 30, 2016. On July 12, 2016, the Juvenile Officer of Jackson County filed a two-count petition, alleging that Child was in need of care and treatment. Count I alleged that Child was "without proper care, custody and support necessary for her well-being and [wa]s subject to the jurisdiction of th[e juvenile c]ourt pursuant to [§] 211.031.1 RSMo in that the mother neglects the child." The petition then laid out numerous allegations demonstrating Mother's neglect, including Mother's neglect of Child's older sibling

resulting in termination of Mother's parental rights to Child's older sibling, Mother's untreated mental illness, and Mother's lack of attempted contact with Child for the ten days preceding the filing of the petition. Count II alleged that Child was "without proper care, custody and support necessary for her well-being and [wa]s subject to the jurisdiction of th[e juvenile c]ourt pursuant to [§] 211.031.1 RSMo in that the father neglects the child." The petition alleged: "Specifically, the father has an extensive pattern of substance abuse and continues to use illegal substances, such that this child is at risk." The petition alleged that D.L. was Child's father.

The juvenile court held a protective custody hearing on July 13, 2016, after which it determined:

> Removal of the child is necessary to protect the child for the following reasons: The mother has a history of substance abuse and made several concerning statements indicating she was not mentally stable. The mother indic[a]ted that at the birth of the child she did not know she was pregnant despite having two positive pregnancy tests previously, the CIA and the government were after her and that there was a conspiracy to bring back slavery. The mother has previously been diagnosed with PTSD, Bipolar, Anxiety and Depression. The father has issues with substance abuse and has been stated by the psychiatrist at the hospital to utilize poor judgment and control. The doctor recommends assessments for both parents. The mother has another child that has been in state care in multiple states due to her refusal to protect the child from sexual abuse and moving in . . . with the perpetrator after the state case was closed. The mother's rights have terminated and a relative is adopting that child.

On October 14, 2016, the juvenile court held an adjudication hearing wherein it received testimony from a Children's Division investigator, court records pertaining to D.L., hospital records pertaining to both Mother and Child, mental health records pertaining to Mother, and juvenile court records pertaining to Child's older sibling.[1] The investigator testified that Child's parents were Mother and D.L. She further testified that she interviewed D.L. about drug use, and D.L. indicated that he had a history of drug usage, including prior convictions; he indicated that his most recent use had been May 2016, and that he continually used drugs on and off for the prior nine years "during times when he was stressed." D.L. also indicated that he had another child whom he was not parenting. The investigator could not recall whether Mother indicated that D.L. was Child's father, whether D.L.'s name was on Child's birth certificate, whether any paternity testing had been conducted on D.L., or whether D.L. had claimed to be Child's father.

At the close of evidence, the juvenile court heard arguments from counsel, and D.L.'s counsel argued that the Juvenile Officer had failed to present any evidence establishing that D.L. was actually Child's father:

> MR. SUROFF: First, Your Honor, we have an issue as to whether [D.L.] is actually the father. I don't believe paternity testing has occurred. There is no evidence of that. There is no evidence of the birth certificate. There's no evidence beyond a man standing in a hospital room saying that he thinks he's the father. That's the only evidence we have.

Following the hearing, the juvenile court issued an order finding that "[t]he evidence sustains the allegations of counts 1

---

1. These exhibits have not been filed with this court on appeal.

and 2 by clear and convincing evidence." Regarding Count II, the court specifically found that D.L. had "a history of abuse of 'crack' cocaine that began in 2007. His last admitted use was in May of 2016. He uses drugs when he is under stress." It then recited D.L.'s prior drug-related convictions from 2002, 2003, and 2004. The court determined that "[c]ontinuation in the home is contrary to the juvenile's welfare" and it scheduled the matter for a disposition hearing.

The disposition hearing was held November 2, 2016, wherein the court received a "social file" and testimony from a case management supervisor from Children's Division.[2] The case management supervisor testified that there was only one contact with both Mother and D.L. since Child was taken into custody, and that was by telephone during a family support team meeting in September, but the call was terminated by either Mother or D.L. as soon as the case worker identified herself. Neither Mother nor D.L. had visited Child at all. At the close of evidence, D.L.'s counsel again argued that there still was no evidence that D.L. was Child's father.

After the hearing, the juvenile court adopted the findings and recommendations of the family court commissioner. Those findings initially modified the prior adjudication order in two respects, one of which was to indicate that "[D.L.] is a putative father, as no determination of paternity has been made as to him."[3] The court ordered Child committed to the custody of Children's Division, noting that "[r]emoval of the child was necessary because the mother's mental health issues and she and [D.L.'s] use of controlled substances placed the infant child at risk of harm in their care." The court further ordered Children's Division to provide various services to Mother, ordered that "[p]aternity shall be established," and that "[i]f paternity is established on [D.L.], he shall be offered the same services as the mother." D.L. appeals.

## Analysis

### A. D.L. lacks standing to challenge the juvenile court's action.

▄▄▄ Prior to addressing the merits of a claim on appeal, we "must determine whether [the] issues present a justiciable controversy." *Schweich v. Nixon,* 408 S.W.3d 769, 773 (Mo. banc 2013). "Justiciability is a 'prudential' rather than a jurisdictional doctrine." *Id.* "A justiciable controversy exists where [1] the plaintiff has a legally protectable interest at stake, [2] a substantial controversy exists between parties with genuinely adverse interests, and [3] that controversy is ripe for judicial determination." *Id.* (quoting *Mo. Health Care Ass'n v. Attorney Gen. of Mo.*, 953 S.W.2d 617, 620 (Mo. banc 1997)). "The first two elements of justiciability are encompassed jointly by the concept of 'standing.' " *Id.* at 774. "Prudential principles of justiciability, to which this Court has long adhered, require that a party have standing to bring an action." *Id.* (quoting *State ex rel. Williams v. Mauer*, 722 S.W.2d 296, 298 (Mo. banc 1986)). "Standing requires that a party have a personal stake arising from a threatened or actual injury." *Id.* (quoting *Williams*, 722 S.W.2d at 298). "Courts have a duty to determine if a party has standing prior to addressing the substantive issues of the case." *CACH,*

---

**2.** As with the exhibits from the adjudication hearing, the sole exhibit from the disposition hearing was also not deposited with this court.

**3.** The other modification corrected a misstatement regarding one of D.L.'s prior convictions.

*LLC v. Askew*, 358 S.W.3d 58, 61 (Mo. banc 2012) (internal citation omitted).

▪ The neglect petition in this case was filed under § 211.031.1.[4] That section provides that the juvenile court

shall have exclusive original jurisdiction in proceedings ... [i]nvolving any child ... within the county ... who is alleged to be in need of care and treatment because ... *[t]he parents, or other persons legally responsible for the care and support of the child* ... neglect or refuse to provide proper support ... or other care necessary for ... her well-being.

§ 211.031.1 (emphasis added). Section 211.261.1 provides that "[a]n appeal shall be allowed to *a parent* from any final judgment, order or decree made under the provisions of this chapter which adversely affects him."[5] (Emphasis added.) Section 211.021.1(5) defines "parent" as "either a natural parent or a parent by adoption and *if the child is illegitimate, 'parent' means the mother*." (Emphasis added.)

Nothing in the record before us indicates that D.L. is anything more than a putative father. And, though paternity is not an issue raised by either party on appeal, the arguments raised in both briefs seem to acknowledge that there has still been no paternity determination with respect to D.L. and Child.

▪ "All appeals are statutory in origin and must be taken in compliance with the appropriate statutes." *In re Beste*, 515 S.W.2d 530, 533 (Mo. 1974). "If this appeal is under the Juvenile Code, appellant must come within the class of persons entitled to appeal." *Id.* If an appellant is not the parent of the child, then the appellant "is not authorized under [§ 211.261.1 of] the Juvenile Code to pursue [the] appeal." *Id.*; *see also In re J.A.D.*, 905 S.W.2d 101, 105 (Mo. App. S.D. 1995) (holding that "Appellants have no right to appeal because ... § 211.261.1 does not confer such a right upon them"); *In re Baby Girl B———*, 545 S.W.2d 696, 697 (Mo. App. 1976) (holding that, because the appellant "was not a parent as defined in § 211.021[.1](5), ... [he could] not appeal pursuant to § 211.261").

▪ "Appeals in juvenile proceedings require strict compliance with the statutes." *In re R.M.P.*, 811 S.W.2d 61, 62 (Mo. App. E.D. 1991). "[T]he provisions of § 211.261 ... limit the protection of appeal only to child, parent and representative of child 'on the part of the child.'" *Id.* Here, because D.L. is neither a parent, as defined by § 211.021.1(5), nor a person authorized to bring an appeal on behalf of Child (*see* footnote 5, *supra*), this appeal must be dismissed.

## B. This appeal is moot.

▪ In any event, this appeal is moot. An appellate court "is obligated, either upon motion of a party or acting *sua sponte,* to examine an appeal for mootness because '[m]ootness implicates the justiciability of a controversy and is a threshold issue to appellate review.'" *Mo. Mun. League v. State*, 465 S.W.3d 904, 906 (Mo.

---

4. All statutory references are to the Revised Statutes of Missouri 2000, as updated through the 2015 Cumulative Supplement, unless otherwise noted.

5. Section 211.261.1 also confers a right to appeal upon the child and the juvenile officer. An appeal may be taken on the child's behalf "by its parent, guardian, legal custodian, spouse, relative or next friend." § 211.261.1. D.L. does not purport to appeal on Child's behalf; thus, this provision is inapplicable. Yet, even if he did so purport, he cannot demonstrate that he falls within the categories of those entitled to bring an appeal on a child's behalf.

banc 2015) (quoting *LeBeau v. Comm'rs of Franklin Cty.*, 459 S.W.3d 436, 438 (Mo. banc 2015)). "A cause of action is moot when the question presented for decision seeks a judgment upon some matter which, if the judgment was rendered, would not have any practical effect upon any then existing controversy. When an event occurs which renders a decision unnecessary, the appeal will be dismissed." *Id.* (quoting *Humane Soc'y of U.S. v. State*, 405 S.W.3d 532, 535 (Mo. banc 2013)).

 Here, D.L. expressly denies any challenge to Child's commitment to the custody of Children's Division. His sole argument on appeal is the court's determination, following the adjudication hearing, that D.L. neglected Child. But the finding he challenges appears to no longer exist following modification of the adjudication order to reflect that D.L. was only a putative father. Under § 211.031.1—the statutory authority for Count II of the petition—only "the parents or other persons legally responsible" for a child can commit neglect. As a putative father only, D.L. was neither a parent nor a person legally responsible for Child. Thus, it appears that the modification of the adjudication order, by the disposition finding that D.L. was merely a putative father, eliminated the very determination D.L. purports to challenge on appeal. Indeed, the court even stated during the disposition hearing that the lack of a paternity determination regarding D.L. could affect "the necessity of Count II," noting that, "[i]f, in fact, he is not the child's father, then why would we be pursuing that." Accordingly, in modifying the adjudication order to reflect D.L.'s status as merely a putative father, the court eliminated the prior finding of neglect regarding D.L. As such, this appeal is moot and must be dismissed.

**Conclusion**

Because there exists no justiciable controversy in this matter, the appeal is hereby dismissed.

Edward R. Ardini, Jr., Presiding Judge, and Anthony Rex Gabbert, Judge, concur.