**STATE of Missouri ex rel. Denver Wesley NEWTON, Jr., Relator,**

v.

**The Honorable J. Dan CONKLIN, Judge, 31st Judicial Circuit, Associate Division 2, Respondent.**

No. 15952.

Missouri Court of Appeals, Southern District, Division One.

March 22, 1989.

Robert W. Stillings, Springfield, for relator.

Darrell L. Moore, Asst. Pros. Atty., Springfield, for respondent.

CROW, Presiding Judge.

This original proceeding in prohibition arises from an action under the Uniform Parentage Act ("UPA"), C.C.S.S.B. 328, Laws 1987, pp. 646–53, effective July 15, 1987, codified as §§ 210.817–.852, RSMo Supp.1987. Before discussing the issues confronting us it is necessary to set forth the relevant details of that action ("the underlying case").

Plaintiffs in the underlying case are B⎯ W⎯ B⎯ ("the child"), allegedly born in 1983, and his mother, T⎯ A⎯ B⎯. The relief sought by the plaintiffs in the underlying case includes an order declaring Denver Wesley Newton, Jr. ("Denver"), relator here, to be the child's father.

Denver, in his answer in the underlying case, denies paternity.

Faced with Denver's denial, plaintiffs filed a motion in the underlying case asking the trial judge to order plaintiffs and Denver to "submit to extended factor blood tests for the purpose of determining the probability of [Denver's] paternity of [the child]." The motion prayed, in pertinent part:

"2. That the blood samples be drawn, photographs be taken, and fingerprints be taken of said persons by an employee of Springfield Medical Laboratory[,] 609 Cherry, ... Springfield, Missouri....

3. That said blood samples be submitted to National Paternity Laboratories, Inc., 5698 Springboro Pike, Dayton, OH 45449, for analysis."

The trial judge conducted a hearing on the motion and took it under advisement.

Ten days later Denver commenced the instant prohibition proceeding in this Court, alleging that the trial judge, respondent here, had advised counsel in the underlying case that respondent would grant the motion unless prohibited by an appellate court. Denver's petition in this Court pled four grounds. They are:

"a. The Motion to Compel Blood Tests and the proposed Order fail to meet the requirements of Missouri Supreme Court Rule 60.01(a)[1] in that the motion and order do not state the 'person or persons' by whom the blood tests are to be performed.

b. The Motion to Compel Blood Tests and the proposed Order fail to meet the requirements of ... Rule 60.01(a) in that the Court's Order would not be an order to submit to blood examinations 'by a physician or physicians.'

c. The Motion to Compel Blood Tests and the proposed Order fail to designate an expert as required by ... Section 210.834 (Supp., 1987).[2]

d. The Trial Court failed to determine the qualifications of the expert as required by ... Section 210.834 (Supp., 1987)."

We issued an order directing respondent to take no further action on the motion for blood tests. Our order instructed respondent to show cause by a specified date why a preliminary order in prohibition should not be issued. Respondent filed nothing within the time allowed, so we issued a preliminary order in prohibition barring respondent from further action on the motion

1. Rule references are to Missouri Rules of Civil Procedure (19th ed. 1988). Rule 60.01(a) provides: "In an action in which ... the blood relationship of a party ... is in controversy, the court in which the action is pending may order the party to submit to ... blood examinations by a physician or physicians.... The order may be made only on motion for good cause shown ... and shall specify the time, place, manner, conditions, and scope of the examination and the person or persons by whom it is to be made."

2. References to statutes are to RSMo Supp.1987, except where otherwise indicated. Section 210.-834, a part of the UPA, provides, in pertinent part:

"1. The court may, and upon request of any party shall, require the child, mother, alleged father ... to submit to blood tests. The tests shall be performed by a court-designated expert qualified as an examiner of genetic markers present on blood cells and components, or other tissue or fluid.

2. The court, upon reasonable request by a party, may order that independent tests be performed by other experts qualified as examiners of genetic or other markers present on blood cells or other components, or other tissue or fluid. In all cases, the court shall determine the number and qualifications of the experts.

...."

for blood tests and establishing a deadline for respondent's answer to relator's petition. Respondent filed a timely answer.

Relator's brief presents two points, each of which avers that respondent's "announced intention to sustain the motion to compel blood tests was error." In neither point, however, does relator contend respondent lacks jurisdiction to grant the motion. Whether, in such circumstances, relator is entitled to utilize prohibition as a means of testing the correctness of respondent's proposed order is a subject we must consider in determining whether our preliminary order should be made absolute.

In *State ex rel. Morasch v. Kimberlin,* 654 S.W.2d 889 (Mo. banc 1983), the Supreme Court of Missouri declined to utilize prohibition to stop a circuit court from proceeding to trial in a cause of action allegedly barred by the statute of limitation. The majority opinion in *Morasch* recognized that the constitutional limits on judicial authority to effect appellate jurisdiction are violated by overgenerous use of the writ of prohibition, and stated that the unfettered use of such device to allow interlocutory review of trial court error should not continue. *Id.* at 891. The opinion reasoned that inasmuch as the statute of limitation did not restrict the power of the circuit court but merely set up a condition precedent to the establishment of the cause of action, the decision of the circuit court to proceed to trial constituted an error of law rather than an act in excess of jurisdiction. *Id.* at 892[2].

In *State ex rel. Hannah v. Seier,* 654 S.W.2d 894 (Mo. banc 1983), handed down the same day as *Morasch,* the Supreme Court of Missouri refused to use prohibition to prevent a circuit court from dismissing an information in a criminal case, holding that as the circuit court had jurisdiction of the case its decision to dismiss the information must be allowed to stand whether right or wrong. *Id.* at 896.

In decisions subsequent to *Morasch* and *Hannah* regarding the use of prohibition to obtain interlocutory review by an appellate court of alleged circuit court error in a pending case the Supreme Court of Mis-

souri appears to have retreated from those holdings. As we shall see, however, the extent of the departure is not easily discerned.

In *State ex rel. Richardson v. Randall,* 660 S.W.2d 699 (Mo. banc 1983), decided three months after *Morasch* and *Hannah,* the Supreme Court of Missouri employed prohibition to bar a circuit court from compelling an accused in a forgery case to disclose to the prosecution the name of a handwriting expert retained by the accused, which expert the accused did not intend to use at trial. The opinion in *Richardson* said:

"This Court has denounced promiscuous and expansive use and abuse of prohibition to allow review of trial court error, particularly in circumstances other than those concerning the question of trial court jurisdiction. [Citing *Morasch* and *Hannah*] But from time to time in peculiarly limited situations there are instances in which absolute irreparable harm may come to a litigant if some spirit of justifiable relief is not made available to respond to a trial court's order. In such circumstances, the extemporaneous character of prohibition may be the remedy to be applied." *Id.* at 701.

*Richardson* held that the circuit court's ruling would result in irreparable harm to the accused, and that she faced the plight of being without other relief, in that once the prosecution had the information regarding the anonymous expert the prosecution could consult with the expert to the detriment of the accused. As no adequate remedy existed by appeal, prohibition was necessary. *Id.* The author of the majority opinions in *Morasch* and *Hannah* concurred in *Richardson.*

In *State ex rel. General Electric Co. v. Gaertner,* 666 S.W.2d 764 (Mo. banc 1984), a party sought a writ of prohibition barring a circuit court from allowing such party to be impleaded as a third party defendant, arguing that the claim asserted by the third party petition was barred by the statute of limitations. The majority opinion in *General Electric,* without mentioning *Mor-*

*asch,* addressed the limitation issue on the merits and concluded that the claim was not barred. One judge concurring in result in *General Electric* observed that *Morasch* had held prohibition did not lie to prevent a circuit court from proceeding to trial on a claim allegedly barred by limitations, and that the majority opinion in *General Electric* had retreated from *Morasch* by reaching the merits in a prohibition action seeking to prevent a circuit court from proceeding to trial on a claim allegedly barred by limitations. *General Electric,* 666 S.W.2d at 768. Another judge concurring in result in *General Electric* observed that the majority opinion "may have a fortunate byproduct in the demise of the recent rule of [*Morasch*] which holds that the writ of prohibition would be used only for the purpose of ruling on jurisdictional questions, and not for the purpose of furthering interlocutory appeals." *General Electric,* 666 S.W.2d at 770.

*State ex rel. D.M. v. Hoester,* 681 S.W.2d 449 (Mo. banc 1984), arose from a suit by an adopted daughter against her adoptive father for alleged sexual molestation. The daughter sought to depose the father's psychiatrist regarding the father's treatment and to compel the psychiatrist to produce medical records about the treatment. The psychiatrist resisted, relying on the physician-patient privilege. The daughter moved the circuit court to compel the testimony and the production of the records, asserting the privilege was inapplicable. The circuit court granted the daughter's motion. The father thereupon sought prohibition in the Eastern District of this Court. The Eastern District ruled that the physician-patient privilege applied and granted prohibition. The Supreme Court of Missouri ordered transfer and held that the physician-patient privilege did not apply, hence the psychiatrist could be compelled to testify about the father's treatment and to produce records about it. The Supreme Court quashed the order in prohibition. *Id.* at 452.

*State ex rel. Faith Hospital v. Enright,* 706 S.W.2d 852 (Mo. banc 1986), arose from a suit alleging medical malpractice by three physicians and negligence by a hospital in granting the physicians staff privileges. The plaintiffs in that suit sought to discover the hospital's peer review committee documents, credentials committee documents and incident reports relating to the three physicians. The circuit court ordered the hospital to produce the documents. The hospital sought a writ of prohibition in the Supreme Court barring the circuit court from allowing discovery. The Supreme Court said:

"This Court has expressed a strong reluctance to review interlocutory allegations of nonjurisdictional trial court error in prohibition actions. [Citing *Morasch*] This Court confirmed, however, in ... *Richardson* ..., 660 S.W.2d 699 ..., a case decided barely three months after *Morasch,* that 'from time to time in peculiarly limited situations there are instances in which absolute irreparable harm may come to a litigant if some spirit of justifiable relief is not made available to respond to a trial court's order. In such circumstances, the extemporaneous character of prohibition may be the remedy to be applied.' [*Richardson*], *supra* at 701." *Faith Hospital,* 706 S.W.2d at 855.

The Supreme Court held in *Faith Hospital* that the peer review committee documents and credentials committee documents concerning the health care provided any patient were exempt from discovery by reason of a 1985 amendment to a statute, and that if the circuit court's order were allowed to stand there would be no adequate remedy on appeal. *Id.* at 855. Therefore, ruled the Supreme Court, prohibition was appropriate to bar the circuit court from ordering production of the protected materials. *Id.* at 856.

*State ex rel. Noranda Aluminum, Inc. v. Rains,* 706 S.W.2d 861 (Mo. banc 1986), handed down the same day as *Faith Hospital,* arose from a discrimination action before an administrative agency. The hearing examiner had ruled that the person who filed the discrimination complaint was not a party to the proceeding, consequently such person could not be deposed absent issuance of a subpoena. Prohibition was

brought in the Supreme Court challenging the hearing examiner's ruling. In discussing the propriety of deciding the issue in a writ proceeding the majority opinion in *Noranda* stated that the Supreme Court had issued writs of prohibition in cases falling within three categories: first, where there is "a usurpation of judicial power because the trial court lacks either personal or subject matter jurisdiction"; second, where there exists "a clear excess of jurisdiction or abuse of discretion such that the lower court lacks the *power* to act as contemplated"; third, if the party seeking prohibition "can satisfy a number of conditions—often falling under the rubric of no adequate remedy by appeal." *Id.* at 862. Holding that the circumstances in *Noranda* fell in category three, *id.* at 863, the Supreme Court made its preliminary writ absolute and commanded the hearing examiner to treat the complainant as a person subject to deposition as a party. *Id.* at 865. One judge dissented in *Noranda*, asserting the majority was permitting an interlocutory appeal in a pending case under the guise of prohibition. *Id.* at 866.

*State ex rel. Williams v. Mauer*, 722 S.W.2d 296 (Mo. banc 1986), arose from a "case management order" entered by a circuit court in 16 pending civil suits alleging asbestos-related injuries. The order established a procedure for discovery in those cases. Certain parties in those cases sought prohibition in the Western District of this Court, claiming the order was contrary to the Rules of Civil Procedure. The Western District issued a preliminary order in prohibition and ultimately made it absolute. The Supreme Court of Missouri granted transfer. The significance of *Williams* insofar as the proceeding before us is concerned appears in this passage in the majority opinion:

"Prohibition is appropriate to compel a trial judge to comply with the rules of this Court where there is no adequate remedy by appeal. *State ex rel. Bullington v. Mason*, 593 S.W.2d 224 (Mo.

banc 1980). Prohibition is also appropriate where a trial judge seeks to permit discovery which is expressly forbidden by statute.... *Faith Hospital ...*, 706 S.W.2d 852...." *Williams*, 722 S.W.2d at 297.

The Supreme Court in *Williams* went on to say, however, that a preliminary order in prohibition will be made absolute only where a trial court has clearly exceeded its jurisdiction. *Id.* at 301. The Supreme Court concluded the record before it did not show that the circuit court's order was clearly in excess of jurisdiction; consequently, the preliminary order in prohibition was quashed. *Id.*

Since *Williams* there have been other decisions by the Supreme Court of Missouri in prohibition actions, including *State ex rel. Schafer v. Casteel*, 732 S.W.2d 903 (Mo. banc 1987); *State ex rel. Munn v. McKelvey*, 733 S.W.2d 765 (Mo. banc 1987); *State ex rel. Ranni Associates, Inc. v. Hartenbach*, 742 S.W.2d 134 (Mo. banc 1987); *Tierney v. Planned Industrial Expansion Authority*, 742 S.W.2d 146 (Mo. banc 1987), *appeal dismissed*, —— U.S. ——, 108 S.Ct. 2030, 100 L.Ed.2d 615 (1988); *State ex rel. McDonnell Douglas Corp. v. Ryan*, 745 S.W.2d 152 (Mo. banc 1988); *State ex rel. Fisher v. McKenzie*, 754 S.W.2d 557 (Mo. banc 1988); and *State ex rel. Barthelette v. Sanders*, 756 S.W.2d 536 (Mo. banc 1988). None of those cases, however, involved issues similar to those before us in the instant prohibition proceeding. We shall therefore look to the Supreme Court decisions we have discussed for guidance on the question of whether relator is entitled to have us review, in this proceeding, the order respondent allegedly proposes to enter in the underlying case.[3] In deciding that question the first step is to examine the attacks made upon the proposed order by relator in the two points he has briefed.

■ The first component of relator's first point complains (as did ground "b" of

---

**3.** One appellate judge's effort to identify, from *Morasch* and later cases, the kinds of instances where prohibition may properly be employed by appellate courts to prevent circuit courts from acting in certain ways in pending cases is found in a concurring opinion in *State ex rel. O'Blennis v. Adolf*, 691 S.W.2d 498, 504–06 (Mo. App.1985).

relator's petition here) that the order respondent proposes to enter will violate Rule 60.01(a) [4] in that said order will require relator "to submit to blood samples to be drawn by Springfield Medical Laboratory with the blood samples to be submitted to a corporation, National Paternity Laboratories, Inc. for analysis." Relator emphasizes that the only persons authorized by Rule 60.01(a) to perform blood examinations are "a physician or physicians." Relator asserts that neither Springfield Medical Laboratory nor National Paternity Laboratories, Inc., is a physician.

The second component of relator's first point avers (as did ground "a" of relator's petition here) that the order respondent proposes to enter will violate Rule 60.01(a) in that said order does not specify the person or persons who are to perform the blood examination. Relator asserts the proposed order provides only that the examination shall be conducted by National Paternity Laboratories, Inc., which, according to relator, is not a "person" within the meaning of Rule 60.01(a).

Implicit in both components of relator's first point is the assumption that respondent's order will be erroneous unless it satisfies all requirements of Rule 60.01(a). For the reasons that follow we reject that assumption.

Rule 60.01 has existed in its present form since January 1, 1975. Until the advent of the UPA in 1987 there was no other rule and no statute empowering a Missouri circuit court to compel a party to submit to a blood examination in a pending civil case.

The UPA, as we have seen, contains § 210.834.1,[5] which not only empowers a circuit court to compel a child, its mother and the alleged father to submit to blood tests,[6] but provides that such court *shall* do so upon request of any party. In that respect the statute creates an absolute right to obtain evidence that did not exist under Rule 60.01(a), which provides that a party may be ordered to submit to a blood examination only for good cause shown.

Additionally, § 210.834.1 provides that the blood tests shall be performed by a court-designated expert qualified as an examiner of genetic markers present on blood cells and components, or other tissue or fluid. In that respect the statute authorizes blood tests by a broader group of experts than Rule 60.01(a), which mentions only physicians as persons authorized to perform blood examinations. While an expert on genetic markers may be a physician, the statute impliedly recognizes that a person can possess the requisite expertise to perform blood tests as defined in the UPA [7] without being a physician.

Furthermore, the UPA provides in § 210.836(3) that evidence relating to paternity may include blood test results weighed in accordance with the evidence of the statistical probability of the alleged father's paternity of the child. Another provision of the UPA, § 210.834.4, provides that when the court finds that the results of the blood tests show that a person presumed or alleged to be the father of the child is not the father of such child, such evidence shall be conclusive of nonpaternity and the court shall dismiss the action as to such party. Rule 60.01 is silent regarding the evidentiary role of blood examination results.

It is thus evident that the UPA goes beyond Rule 60.01 in that the UPA makes blood tests mandatory upon request of any party, authorizes such tests to be performed by court-designated experts qualified as examiners of genetic markers without requiring such examiners to be physicians, provides that blood test results shall constitute evidence on the issue of paterni-

**4.** Footnote 1, *supra.*

**5.** Footnote 2, *supra.*

**6.** Section 210.817(1), a part of the UPA, states: "'**Blood tests**' [means] any medically recognized analysis which uses blood or other body tissue or fluid to isolate and identify genetic or other characteristics in order to determine the proba-

bility of paternity or the probability of exclusion of paternity. The term specifically includes, without being limited to, tests employing red cell antigens, white cell antigens, including the human leukocyte antigen (HLA) test, and serum proteins and enzymes[.]"

**7.** Footnote 6, *supra.*

ty, and requires exoneration of an alleged father where the court finds that the blood test disproves paternity.

Mo. Const. art. V, § 5 (1945, amended 1976) states:

"The supreme court may establish rules relating to practice, procedure and pleading for all courts ..., which shall have the force and effect of law. The rules shall not change ... the law relating to evidence.... Any rule may be annulled or amended in whole or in part by a law limited to the purpose."

■ Where a rule relating to practice, procedure and pleading adopted by the Supreme Court of Missouri under the express authority of the above constitutional provision is inconsistent with a statute and has not been annulled or amended by later enactment of the General Assembly, the rule supersedes the statute. *State ex rel. Peabody Coal Co. v. Powell,* 574 S.W.2d 423, 426[3] (Mo. banc 1978); *State v. Clark,* 723 S.W.2d 17, 19[1] (Mo.App.1986). A statute must specifically refer to a rule in order to amend or annul it. *State v. Tate,* 658 S.W.2d 940, 947[12] (Mo.App.1983). *See: State ex rel. Pressner v. Scott,* 387 S.W.2d 539, 543[4] (Mo. banc 1965); *Miller v. Russell,* 593 S.W.2d 598, 604[8] (Mo.App.1979).

Nowhere in the UPA is there a provision specifically referring to Rule 60.01 or purporting to amend or annul it. Consequently, if the provisions of the UPA regarding blood tests are merely provisions relating to practice, procedure and pleading, they are subservient to Rule 60.01 in instances where conflicts exist. One such instance is the provision in the Rule specifying that blood examinations be performed by physicians, and the provision in § 210.834.1 authorizing blood tests to be performed by court-designated experts qualified as examiners of genetic markers. Another instance is the provision in the Rule stating that blood examinations may be ordered only for good cause shown, and the provision in § 210.834.1 directing that the court shall, upon request of any party, require the child, mother and alleged father to submit to blood tests.

If, however, the provisions of the UPA regarding blood tests are laws relating to evidence, such provisions are unaffected by Rule 60.01, as the Supreme Court's rulemaking power under Mo. Const. art. V, § 5 is limited to rules relating to practice, procedure and pleading. *Glasby v. State,* 739 S.W.2d 769, 771[3] (Mo.App.1987).

A conflict between a Supreme Court rule and a statute relating to evidence was resolved in favor of the statute in *State ex rel. Mehle v. Harper,* 643 S.W.2d 643 (Mo. App.1982). There the prosecutor in a driving while intoxicated case sought to utilize a Supreme Court discovery rule to compel the accused to disclose the results of a blood alcohol test ordered by the accused's treating physician for purpose of treatment. The accused resisted, claiming the physician-patient privilege (§ 491.060(5), RSMo 1978) protected the results from disclosure. The prosecutor contended the statute was superseded by the discovery rule. The Western District of this Court rejected that argument, stating:

"The interpretation contended for [by the prosecutor] would allow the state to compel discovery in disregard of the statute. This interpretation would be contrary to the constitutional mandate requiring supreme court rules to be in conformity with the law relating to evidence. Mo. Const. art. V, § 5." *Id.* at 644[1].

The provisions of the UPA mentioned earlier in this opinion do more than provide a procedure for obtaining a blood test in a paternity action. Section 210.817(1) defines "blood tests" and lists certain specific kinds of tests included within that term; § 210.834.1 requires the court to compel the child, mother and alleged father to submit to blood tests upon request of any party, and provides that blood tests shall be performed by a court-designated expert qualified as an examiner of genetic markers present on blood cells and components, or other tissue or fluids; § 210.834.4 provides that when the court finds that the blood test results show that a person presumed or alleged to be the father of the child is not the father of such child, the evidence shall be conclusive of nonpaternity and the court shall dismiss the action as

to such party; and § 210.836(3) provides that evidence relating to paternity may include blood test results, weighed in accordance with the evidence of the statistical probability of the alleged father's paternity of the child. It is clear from § 210.817 that the term "blood tests" referred to in §§ 210.834 and 210.836 means blood tests as defined by § 210.817(1).

We hold that the above provisions of the UPA establish "law relating to evidence" within the meaning of Mo. Const. art. V, § 5. That being so, such provisions are beyond the reach of Rule 60.01. *Glasby*, 739 S.W.2d at 771[3].

Relator's first point, as we have seen, complains that respondent's proposed order will not meet the requirements of Rule 60.01(a). While that rule has been utilized to obtain an order for a blood examination in an action to establish paternity prior to the UPA, *State ex rel. Grimes v. Appelquist*, 706 S.W.2d 526 (Mo.App.1986), it is clear from the record before us that respondent intends to order the blood tests in the underlying case pursuant to the UPA, § 210.834.1, not Rule 60.01.[8] Therefore, relator's argument that respondent's proposed order fails to comply with Rule 60.01(a) affords relator no basis for relief here, as § 210.834.1 is not subservient to Rule 60.01. *Givan v. Adolf*, 723 S.W.2d 942 (Mo.App.1987), cited by relator, is of no avail as that case involved an allegation that a circuit court order was beyond the authority of Rule 60.01(a).

As the attacks on respondent's proposed order in relator's first point are without merit we need not determine whether, had they been meritorious, relief by prohibition would have been proper under *Morasch* and the other Supreme Court decisions discussed earlier.

■ The first component of relator's second point complains (as did ground "c" of relator's petition here) that the order respondent proposes to enter[9] will not comply with § 210.834.1[10] in that said order does not identify the expert who is to perform the blood tests, but provides only that the tests shall be performed at National Paternity Laboratories, Inc. The second component of relator's second point avers (as did ground "d" of relator's petition here) that the order respondent proposes to enter will not comply with § 210.834.1 in that said order fails to detail the qualifications of the expert who is to perform the blood tests.

Assuming for the purpose of deciding relator's second point that the order respondent will enter (if allowed to) will not designate any individual as the person by whom the blood tests shall be performed at National Paternity Laboratories, Inc., and further assuming, for the same purpose, that respondent will neither determine the qualifications of such person nor recite such qualifications in the order, we must decide whether those alleged shortcomings are sufficient, under *Morasch* and later Supreme Court cases we have discussed, to justify our intervention by prohibition at this stage of the underlying case.

In deliberating that issue we note, as observed earlier, that relator makes no contention that respondent lacks jurisdiction over the parties or subject matter in the underlying case, nor does relator maintain that respondent lacks authority under the UPA to order the blood tests. Additionally, relator makes no showing that he will sustain irreparable harm if the proposed order is entered in the form relator expects. The only reference to harm we find in relator's brief is an averment that if the person drawing the blood and performing the tests is a physician who has been determined to be a qualified expert, the test results "will be more credible" and relator will have a substantial degree of security

---

**8.** We do not imply that Rule 60.01 can no longer be utilized to obtain a blood examination in a paternity case. That issue is not before us.

**9.** A copy of the proposed order—if indeed the proposed order exists—has not been supplied us. Relator, in his second point, assumes that inasmuch as the motion for blood tests in the underlying case neither identifies any person as an expert nor details the expert's qualifications, the order respondent proposes to enter will be deficient in those two respects.

**10.** Footnote 2, *supra.*

that he will not be exposed "to physical risk such as the risk of contracting AIDS or some other infectious disease that can be transmitted by needle."

As to the alleged danger of disease, nothing in the record before us demonstrates that relator manifested any concern in the circuit court that the drawing of blood at Springfield Medical Laboratory would endanger him or that the procedure would be carried out under substandard medical conditions. The record contains no motion by relator in the underlying case asking respondent to order the blood drawn at some facility other than Springfield Medical Laboratory or by a specific physician or medical technician. The arguments presented to respondent on plaintiffs' motion for blood tests were evidently not recorded, as no transcript has been filed with us.

If relator indeed believes the drawing of his blood by an employee of Springfield Medical Laboratory will endanger his health he can register that protest in the circuit court, and such court can include in the blood test order such provisions, if any, as the court deems necessary to protect the health of relator (and plaintiffs, who apparently do not share relator's anxiety).

As to relator's averment that the blood test results will be more credible if they are performed by a physician who has been determined to be a qualified expert, we have ruled in our rejection of relator's first point that respondent is not required to designate a physician as the blood examiner. While § 210.834.1 appears to contemplate that a specific person rather than an institution be designated to perform blood tests, and that the court ordering the tests is to determine the qualifications of the examiner prior to entering the order, we are not persuaded that relator will suffer irreparable harm if respondent fails to fulfill those duties in the underlying case. If the test results are adverse to relator he can object at trial that such evidence is inadmissible by reason of respondent's alleged oversights. If such objections are overruled and the judgment of the circuit court is adverse to relator we see no reason—and relator advances none—why appeal will not afford him an adequate remedy.

As respondent has jurisdiction over the parties and subject matter in the underlying case and has authority under § 210.834.1 to enter the proposed order (even if it be flawed in the respects alleged by relator's second point), and as relator has failed to show the proposed order will violate any applicable Supreme Court rule or will cause him irreparable harm, we hold that relator's second point fails to set forth any basis for relief by prohibition under the guidelines of *Morasch* and later cases we have discussed. Accordingly, our preliminary order in prohibition is quashed.

HOLSTEIN, C.J., and GREENE, J., concur.