STATE of Missouri, ex rel. Robert
P. McCULLOCH, Relator,

v.

Honorable Herbert LASKY, Respondent.

No. 64647.

Missouri Court of Appeals,
Eastern District,
Division Three.

Dec. 28, 1993.

Edward F. McSweeney, St. Louis, for relator.

Marianne Markxkors, St. Louis, for respondent.

CARL R. GAERTNER, Presiding Judge.

Robert P. McCulloch, the Prosecuting Attorney of St. Louis County (the State), filed this original action in prohibition, seeking to prevent the Honorable Herbert Lasky from permitting defendant, William Weaver, to attend his Rule 29.15 evidentiary hearing and from ordering that some of the State's trial files be sealed for future appellate review of Weaver's case. This court issued a prelimi-

nary writ of prohibition which we now quash as improvidently issued.

On July 20, 1988, a jury found Weaver guilty of murder in the first degree. He was sentenced to death on September 15, 1988, and was confined to the Potosi Correction Center. Weaver then filed a *pro se* Motion to Vacate, Set Aside or Correct Judgment and Sentence pursuant to Missouri Supreme Court Rule 29.15. Weaver alleges that George "Buzz" Westfall, the trial prosecutor and former St. Louis County Prosecuting Attorney, engaged in prosecutorial misconduct by: (1) failing to disclose all information as required by Supreme Court Rule 25.03, such as notes, reports and memos summarizing the statements of witnesses called to testify, especially those concerning a "deal" the State struck with Weaver's cellmate, Ronald Tabler, who testified against Weaver concerning an aggravating circumstance to the crime;[1] (2) questioning Weaver's character witnesses regarding their knowledge of his previous arrests for various offenses; and (3) asking Weaver's character witnesses whether they knew about any bullet holes in Weaver's body solely to inflame the jury.

Eventually, Weaver's case was assigned to the Honorable Arthur Litz, who denied a number of Weaver's discovery requests, including a request for production of the State's files for the prosecutions of Weaver and Tabler. Judge Litz retired, and Weaver's cause was later assigned to Judge Lasky, who declined to reconsider Judge Litz's discovery rulings[2] but granted Weaver's request for an evidentiary hearing on his 29.15 motion. Weaver also moved for a writ of habeas corpus ad testificandum, requesting that he be permitted to attend the hearing. Judge Lasky granted this motion, and Weaver appeared at the hearing every day from September 13 to September 15, 1993. The cause was then continued to September 30, 1993, and Weaver again moved for a writ of habeas corpus to attend the conclusion of the hearing, which Judge Lasky granted.

During the hearing from September 13 to September 15, various witnesses testified. Ken Tihen, an investigator for the Prosecuting Attorney's Office, testified that he interviewed Tabler between one and five times, he made a report regarding his interviews to Westfall and John Ross, but he disposed of his copy of his notes after Weaver's trial. John Ross, an assistant prosecutor who prosecuted Tabler and helped Westfall prepare the Weaver prosecution, testified that he met with Tabler a number of times and reviewed his F.B.I. file. Ross then reviewed his trial file and refused to answer any additional questions regarding Tabler. After reviewing his file on the Weaver case, Westfall testified that he could not recall what information had been disclosed to him in discovery or where he received the information regarding Weaver's prior arrests and gunshot wounds.

During both Ross' and Westfall's testimony, Weaver moved for leave to inspect their trial files. The State objected, citing the work product privilege. Judge Lasky denied these requests as well as Weaver's request for an *in camera* inspection of the files.

Weaver then moved to have the files sealed and marked as exhibits. Judge Lasky granted this request but permitted the State to retain the files until the conclusion of the hearing. The State objected that the files were not properly before the court. Two subpoenas were then served on the St. Louis County Prosecuting Attorney's Office requiring production of the trial files. In response, the State moved to quash the subpoenas, which Judge Lasky granted based on the work product privilege. He also ordered, at Weaver's request and over the State's objection, that the trial files be placed under the court's seal for future review by any appellate court.

The State filed a petition for a writ of prohibition with this court. We issued a preliminary order in prohibition on September 28, 1993.

---

1. Tabler, as the sole source of the evidence concerning the aggravating circumstance, testified that Weaver admitted he was a hitman and that he knew the victim was going to be a witness and was killed for that reason.

2. Pre-trial discovery rulings are interlocutory in nature, subject to reconsideration at or prior to trial if the circumstances warrant.

In its first point, the State contends that pursuant to § 491.230(2) RSMo.Cum.Supp. 1992 Judge Lasky exceeded his jurisdiction in granting Weaver's request to attend his 29.15 hearing.

■ Under Rule 29.15(h), which was adopted and became effective two years before § 491.230, it is within the motion court's discretion to determine whether movant may be present at his 29.15 evidentiary hearing. *State v. Athanasiades,* 857 S.W.2d 337, 339 (Mo.App.1993). Section 491.230(2), however, provides in pertinent part that:

> No person detained in a correctional facility of the department of corrections shall appear and attend or be caused to appear and attend any civil proceeding, regardless of whether he is a party....

Clearly, as an inmate on deathrow at the Potosi Correction Center, Weaver is "detained in a correctional facility of the department of corrections." Furthermore, Weaver's post-conviction hearing is a civil proceeding. *See Leisure v. State,* 828 S.W.2d 872, 878 (Mo. banc 1992); *State v. Finerson,* 826 S.W.2d 367, 371 (Mo.App.1992). Based on these factors, the State argues, Judge Lasky has no jurisdiction under § 491.230 to permit Weaver to attend the hearing and should be prohibited from doing so. We disagree.

■ Mo. Const. art. V, § 5 (1945, amended 1976) states:

> The supreme court may establish rules relating to practice, procedure and pleading for all courts ..., which shall have the force and effect of law.... Any rule may be annulled or amended in whole or in part by a law limited to the purpose.

Where a rule adopted by the Missouri Supreme Court in accordance with the above constitutional provision is inconsistent with a statute and has not been annulled or amended by later enactment of the legislature, the rule supersedes the statute. *State ex rel. Peabody Coal Co. v. Powell,* 574 S.W.2d 423, 426 (Mo. banc 1978); *State ex rel. Newton v. Conklin,* 767 S.W.2d 112, 118 (Mo.App.1989). In order to amend or annul a rule, a statute must specifically refer to the rule. *Conklin,* 767 S.W.2d at 118.

■ Rule 29.15(h) is procedural. Furthermore, nowhere in § 491.230 is there a provision expressly referring to Rule 29.15 or purporting to amend or annul it. Therefore, Rule 29.15(h) supersedes § 491.230, authorizing Judge Lasky to permit Weaver to attend his evidentiary hearing.

In its second point, the State charges that Judge Lasky exceeded his jurisdiction in ordering that the State's trial files be placed under court seal. The State contends that under *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), and Missouri Supreme Court Rule 4–3.8(d) it had an affirmative duty to disclose to Weaver all evidence or information which tended to negate his guilt or mitigate the offense. However, under Rule 25.10(A), the work product of the State's counsel is not subject to discovery. Based on these principles and the motion court's ruling that the trial files were privileged work product, the State argues that a presumption exists that it has complied with *Brady* and Rule 4–3.8(d), which can only be overcome to authorize an inspection of the files by a showing with sufficient certainty that the files contain discoverable information. Because Weaver failed to make such a showing, the State concludes, the motion court had no authority to place the files under court seal.

■ We need not address the sophistry of the State's argument that a defendant must establish the existence of discoverable information as a prerequisite to the inspection of the files to determine if in fact they contain such information. Three witnesses referred to the State's files in their testimony and to the use of these files as a means of refreshing their recollection. Even before the days of discovery in criminal cases, such testimony was sufficient to permit an inspection of the documents by the defendant's attorney. *State v. Aubuchon,* 381 S.W.2d 807, 814 (Mo. 1964). At the very least, the trial court should examine *in camera* documents, reports, or statements in the hands of the State when it is reasonably suggested that without disclosure a defendant's trial would be fundamentally unfair. *Id.*

■ The Missouri Supreme Court, relying on *State v. Nobles,* 422 U.S. 225, 95 S.Ct.

2160, 45 L.Ed.2d 141 (1975), has recently ruled that where a party makes testimonial use of work product material, such as permitting its use to refresh the memory of a witness, the work product doctrine is waived with respect to the matters covered in that testimony. *Callahan v. Cardinal Glennon Hospital,* 863 S.W.2d 852, 868, (Mo. banc 1993). Thus, respondent was well within his authority in ordering the State's files preserved for meaningful appellate review.

We have concluded the preliminary writ was improvidently granted, and it is therefore quashed.

CRAHAN and SMITH, JJ., concur.