

# IN THE MISSOURI COURT OF APPEALS
## WESTERN DISTRICT

| | | |
|---|---|---|
| IN RE: J.A.F., JUVENILE; | ) | |
| | ) | |
| JUVENILE OFFICER, and | ) | |
| DEPARTMENT OF SOCIAL | ) | |
| SERVICES, CHILDREN'S | ) | |
| DIVISION, | ) | |
| | ) | |
| Respondents, | ) | |
| | ) | |
| v. | ) | WD85942 |
| | ) | |
| J.J.J.F., | ) | Filed: December 5, 2023 |
| | ) | |
| Appellant. | ) | |

**Appeal from the Circuit Court of Boone County**
**The Honorable Leslie Schnieder, Judge**

**Before Division Two: Mark D. Pfeiffer, P.J., and**
**Alok Ahuja and Thomas N. Chapman, JJ.**

J.J.J.F, the father of the minor child J.A.F., appeals from a judgment entered by the Circuit Court of Boone County. The circuit court's judgment maintained J.A.F. in the custody of the Children's Division of the Department of Social Services, residing with a non-relative foster family. Father appeals under § 211.261.2(2),[1] which authorizes an interlocutory appeal "from any order

---

[1] All statutory references are to the 2016 edition of the Revised Statutes of Missouri, as updated by the 2023 Cumulative Supplement.

changing or modifying the placement of a child." Because the judgment Father appeals did not alter J.A.F.'s placement, he has no right to appeal under § 211.261.2(2), and the appeal is accordingly dismissed.

## Factual Background

J.A.F. is a male child who is presently almost seven years old. On July 29, 2020, law enforcement came to the home of a friend of J.A.F.'s mother in Columbia, to investigate J.A.F.'s placement there. They discovered that J.A.F. had been left with Mother's friend, two hours away from Mother's home, for several months.

On the same day, the circuit court entered an Order of Protective Custody which found that J.A.F. was "in imminent danger of suffering serious physical harm or a threat to life as a result of abuse or neglect and protective custody is necessary to protect the juvenile pending hearing." The court ordered that J.A.F. "be placed in the temporary custody and supervision of the Children's Division for appropriate placement." The order noted that Children's Division had been unable to locate any suitable relative placement for J.A.F., and that "placement of the juvenile in an alternative placement is in the juvenile's best interest."

J.A.F. was placed with Foster Family (to whom he is not related) either on the night of July 29, 2020, or in the early morning of July 30. He has resided with Foster Family continuously since that time.

On September 2, 2020, the circuit court issued an Order of Adjudication and Disposition, finding that J.A.F. was in need of care and treatment pursuant to § 211.031(1). The Order found that Mother had left J.A.F. in a friend's care for months, and that Mother has a history of substance abuse and violent

relationships. The Order noted that the Juvenile Officer had been unable to verify Mother's current living conditions, or her participation in any treatment programs, and that Father was then incarcerated. The circuit court further found that "no relative placements are known to the court at this time." The court ordered that J.A.F. "be made a ward of the Court, in the custody of Children's Division and under the supervision of the Children's Division for appropriate placement." The Order found "that continuation of the child in the home is contrary to the welfare of the child, and that placement in alternative care is in the best interest of the child." J.A.F. continued to reside with Foster Family.

On January 20, 2021, a paternal aunt and uncle (hereinafter referred to as "Paternal Uncle"), who reside in Colorado, filed a Motion to Intervene as Third Parties in the juvenile proceeding, claiming that Paternal Uncle should be awarded physical and legal custody of J.A.F. Mother, the Guardian *ad Litem*, and the Juvenile Officer opposed Paternal Uncle's intervention. The circuit court denied the motion to intervene. Paternal Uncle subsequently filed an Amended Motion to Intervene and Motion to Reconsider on March 1, 2021, which the circuit court also denied.

Paternal grandfather and step-grandmother (hereinafter "Paternal Grandparents"), who reside in St. Louis, filed a Motion to Intervene on November 9, 2021, under § 211.117. The circuit court granted the motion. Cornerstones of Care, the case management contractor assigned to J.A.F.'s case, supported the introduction of J.A.F. to Paternal Grandparents.

On February 8, 2022, Paternal Grandparents filed a Motion for Placement with Family, which was denied.

Following an April 25, 2022 permanency hearing, the circuit court entered an order specifying that the permanency plan for J.A.F. was reunification with Mother, with adoption as a concurrent plan. The circuit court did not find that placement with a relative was in J.A.F.'s best interest, but ordered weekly phone calls with Father and unsupervised visitation with Paternal Grandparents. The order specified that J.A.F. would "be continued as a ward of the court, in the custody and under the supervision of the Children's Division for appropriate placement." J.A.F. continued to reside with Foster Family.

On September 2, 2022, Cornerstones of Care filed a Motion for Best Interest Hearing on Permanency Goal and Placement. The motion noted that J.A.F. had been "placed in a traditional foster home" since 2020. The motion noted that, under § 210.720.1, "*[a]t least* annually, the Court is required to hold a hearing for the purpose of determining *in accordance with the best interests of the child* a permanent plan for the placement of the child, including whether or not the child should be continued in foster care or whether the child should be returned to a parent, guardian or relative . . . ." The motion asked the court to "make a determination as to whether the minor child's permanency plan should be changed to something other than reunification with a parent, such that Cornerstones of Care could more effectively proceed in planning a permanent outcome for the minor child." The motion also asked the court to "make a determination as to whether placement with a relative is contrary to the best interests of the minor child and therefore whether the minor child should be placed in a traditional foster home or whether the minor child should be placed with a relative."

After hearing testimony and receiving evidence from the parties, the circuit court entered a further "order and judgment" on December 30, 2022. The court maintained J.A.F.'s placement with Foster Family. The court also maintained the existing permanency plan of reunification with Mother, with a concurrent plan of termination of parental rights and adoption. The court's December 2022 judgment noted that J.A.F. "has been in care for approximately two and one half years, during which time he has lived continuous[ly] with [Foster Family]." The judgment found that "it is in the juvenile's best interest to remain in his current[ ] placement with [Foster Family]," and that "changing the minor child's placement to be with grandparents and his Aunt and Uncle is not in the best interest of the juvenile." The judgment concluded that J.A.F. "is thriving, overcoming traumas, bonding with and in a familial relations[hip] with his foster family and the best interest of the child require[s] continuity of placement and disfavor[s] distribution [*sic*]."

Father appeals.

## Discussion

Before addressing Father's claims on the merits, "[j]urisdiction must be decided at the outset." *State v. Ward*, 568 S.W.3d 888, 890 (Mo. 2019). The Juvenile Officer contends that this Court does not have appellate jurisdiction. We agree.

"The right to appeal derives solely from statute. If a statute does not provide the right of appeal, the appeal must be dismissed." *L.N.G.S. v. A.S.*, 661 S.W.3d 792, 794 (Mo. 2023) (citing *J.I.S. v. Waldon*, 791 S.W.2d 379, 379 (Mo. 1990)); *see also P.D.E. v. Juvenile Officer*, 669 S.W.3d 129, 131 (Mo. 2023); Rule

5

120.01 (in juvenile cases, "[a]n appeal shall be allowed as provided by statute"). "'Appeals in juvenile proceedings require strict compliance with the statutes.'" *In Int. of M.B.F.*, 528 S.W.3d 480, 484 (Mo. App. W.D. 2017) (quoting *In re R.M.P.*, 811 S.W.2d 61, 62 (Mo. App. E.D. 1991)).

"An interlocutory order may only be immediately appealed when specific statutory authority grants the party the right to such an appeal." *Lopez v. Heartland Midwest, LLC*, 602 S.W.3d 841, 845 fn. 4 (Mo. App. W.D. 2020) (citation and internal quotation marks omitted). Prior to August 28, 2021, orders entered under chapter 211 of the Revised Statutes which modified the placement of a child were not appealable. Section 211.261.2 was amended in 2021, however, to add a new subsection (2), which provides that "an appeal shall be allowed to the . . . [p]arent, guardian ad litem, or juvenile officer from any order changing or modifying the placement of a child." § 211.261.2(2).

Father invokes § 211.261.2(2) to justify this appeal, claiming that the December 30, 2022 judgment "changed or modified placement of the juvenile from appropriate placement to placement with Foster Parents and entered findings on the best interest of the child."

At the outset, we question whether the circuit court's December 30, 2022 judgment is, in fact, a judgment entered *under chapter 211*, and therefore subject to appeal under § 211.261.2(2) at all. The December 2022 judgment states that it was intended to resolve "Paternal Aunt and Uncle's Motion to Intervene and Cornerstones of Care['s] Motion for Best interest [hearing] on placement and permanency Goal of juvenile." (The ruling on Paternal Uncle's motion to intervene is no longer at issue.)

6

From the record, it appears that the circuit court's December 2022 judgment is a permanency hearing order entered under § 210.720, which would not be appealable under § 211.261.  Cornerstones of Care's Motion for Best Interest Hearing on Permanency Goal and Placement specifically invoked § 210.720.1.  Section 210.720.1 provides that, in the case of a child "who has been placed in foster care by a court," "[t]he court shall . . . hold a permanency hearing within twelve months of initial placement and at least annually thereafter." § 210.720.1.  The statute specifies that

> [t]he permanency hearing shall be for the purpose of determining in accordance with the best interests of the child a permanent plan for the placement of the child, including whether or not the child should be continued in foster care or whether the child should be returned to a parent, guardian or relative, or whether or not proceedings should be instituted by either the juvenile officer or the division to terminate parental rights and legally free such child for adoption.

The court is required to enter an order containing findings of fact and conclusion of law following a permanency hearing.  § 210.720.3.

The circuit court's December 30, 2022 judgment addresses the issues required to be addressed at a permanency hearing:  it determines that "it is in the best interest of [J.A.F.] [that] the permanency goal remain as reunification with concurrent plan of termination of parental rights and adoption"; and it determines that it is in J.A.F.'s best interests to be continued in foster care rather than be placed with a relative.  To the extent the December 2022 order and judgment is a permanency hearing order, however, it would not be subject to appeal under § 211.261.2.  This Court has clearly stated that orders entered following permanency hearings are not appealable.  *L.S.H. v. C.H.*, 652 S.W.3d 408, 416-17 (Mo. App. W.D. 2022); *In Int. of S.R.R.*, 489 S.W.3d 926, 928-930

7

(Mo. App. W.D. 2016); *In re T.G.O.*, 360 S.W.3d 355, 358 (Mo. App. E.D. 2012); *In re L.E.C.*, 94 S.W.3d 420, 425 (Mo. App. W.D. 2003). We explained that "permanency hearings are not governed by Chapter 211," but instead by § 210.720, "and therefore do not fall under the appealability criteria afforded by section 211.261." *L.S.H.*, 652 S.W.3d at 416.

The circuit court's December 2022 judgment responds to a motion which sought a permanency hearing under § 210.720.1, and the judgment addresses the issues required to be considered at such a hearing. While the judgment does not expressly state that it is a permanency hearing order (and in fact contains no formal caption or title at all), "'[i]t is the substance that is important.'" *All Star Awards & Ad Specialties, Inc. v. HALO Branded Sols.*, 675 S.W.3d 548, 559 (Mo. App. W.D. 2023) (quoting *Barnett v. Scholz*, 496 S.W.2d 812, 815 (Mo. 1973)). To the extent the circuit court's December 30, 2022 order and judgment is a permanency hearing order, it would not be subject to appeal under § 211.261.2(2).

Even if we assumed that the December 2022 judgment was entered under chapter 211, it would not be subject to interlocutory appeal under § 211.261.2(2), because the judgment does not "chang[e] or modify[ ] the placement of a child" within the meaning of the statute. Rather than changing or modifying J.A.F.'s placement, the circuit court found that it was in J.A.F.'s best interest to remain in the same placement with Foster Family, where he had been for two-and-a-half years, since this case commenced. The circuit court *refused to change* J.A.F.'s placement, as advocated by Father and his family, to place him with Paternal Grandparents or with Paternal Uncle. Nor did the circuit court modify any of the

material terms of J.A.F.'s placement:  the permanency goal remained reunification with a concurrent plan of adoption; and the terms for family visitation remained unchanged.

A court order which refuses to alter a child's placement cannot be denominated an "order[ ] changing or modifying the placement of the child" under § 211.261.2(2).  "Change" means "to make different in some particular : ALTER," "to make radically different : TRANSFORM," or "to replace with another."  https://www.merriam-webster.com/dictionary/change.  The definition of "modify" similarly refers to *changes*, whether minor or more fundamental.  https://www.merriam-webster.com/dictionary/modify.  A court's *refusal* to alter a child's placement cannot be considered a "change" or "modification" of that placement.

Father argues that, prior to the December 2022 judgment, the circuit court's orders had merely placed J.A.F. in the custody of the Children's Division "for appropriate placement," thus giving the Children's Division discretion as to an appropriate foster home.  Father contends that, in the December 2022 judgment, the circuit court for the first time identified Foster Family by name as J.A.F.'s alternative placement, thereby eliminating the Children's Division's authority to determine where he would live.  Father contends that the circuit court thereby "modif[ied] [J.A.F.'s] placement," triggering Father's right to an interlocutory appeal.  We disagree.  The circuit court's December 2022 judgment merely maintains the *status quo*.  While the judgment refers to J.A.F.'s adjustment to Foster Family's home, it does so only to justify leaving the current custodial arrangements in place, and to explain why the court rejected a

9

placement either with Paternal Grandparents or Paternal Uncle. The court's judgment merely maintains, but does not modify, J.A.F.'s existing placement.

Limiting § 211.261.2(2) to circuit court orders which actually alter a child's placement does not lead to an absurd result. The General Assembly may well have determined that the disruption and expense of an interlocutory appeal in an abuse or neglect proceeding is only justified where the child's placement actually changes. The child's *initial* placement with particular persons, or in a particular facility, can be challenged at the time that placement is initially ordered. *See, e.g., K.S.W. v. C.P.S.*, 454 S.W.3d 422, 427 (Mo. App. W.D. 2015). After making an initial custody and placement determination, the circuit court retains jurisdiction over children coming within its custody, and may review the child's placement on multiple occasions over the course of the case. Concerned individuals may seek modification of the child's placement, or the court may review the child's placement on its own motion, at any time. *See* § 211.251.1, .2; *Int. of J.G.W.*, 655 S.W.3d 251, 254-55 (Mo. App. E.D. 2022). If a separate interlocutory appeal could be prosecuted every time the circuit court *refuses* to alter the child's placement, it could result in substantial disruption, burden and expense to the parties, to the circuit court, and to this Court.

Ultimately, whatever the reasons for the limitations on interlocutory appeals found in § 211.261.2(2), our duty is to enforce those limitations. "This Court acknowledges holdings that render a trial court's judgment unreviewable are disfavored. However, 'this Court cannot invade the General Assembly's province to create a right of appeal where none exists.'" *L.N.G.S. v. A.S.*, 661

S.W.3d 792, 796 (Mo. 2023) (citing and quoting *J.I.S. v. Waldon*, 791 S.W.2d 379, 379 (Mo. 1990)).

No statute allows for an immediate appeal of the December 30, 2022 judgment. And "[a]n appeal that lacks statutory authority, and thus the right to be brought, is beyond the jurisdiction of this court to hear." *L.L. v. D.L.*, 607 S.W.3d 206, 209 (Mo. App. W.D. 2020) (quoting *Johnston v. Saladino Mech.*, 504 S.W.3d 138, 140 (Mo. App. W.D. 2016)).

### Conclusion

The appeal is dismissed.

_____
Alok Ahuja, Judge

All concur.

11